NEBRASKA LOAN AND TRUST COMPANY, APPELLANT, v. W. F. NINE ET AL., APPELLEES.

[FILED OCTOBER 4, 1889.]

Corporations: TRADE NAME: INFRINGEMENT. In the year 1882 plaintiff organized a business of loaning money, buying and selling real estate mortgages, city and county and other municipal evidences of debt, at the city of Hastings, Nebraska, and took as its corporate name " The Nebraska Loan and Trust Company," its place of business being in Hastings. In carrying on its business it largely increased its capital and extended the sphere of its operations until it transacted business in a number of counties of the state. Subsequent to that time, and in the year 1886, defendants were proposing to organize a loan and trust company in the city of Lincoln with the corporate name of " Nebraska Loan and Trust Company." In an action in equity by the Hastings company to enjoin the members of the Lincoln company from taking the corporate name referred to, it was *held*, that the law governing trade-marks upon manufactured goods did not apply, and that plaintiff could take no property in the name of the state to the exclusion of the defendant. The proof failing to show a conflict of interest, or that the business transacted by the defendants would materially interfere with the business of the plaintiff, an injunction was refused.

APPEAL from the district court for Lancaster county. Heard below before FIELD, J.

*Angus McDonald, J. M. Ragan,* and *Lamb, Ricketts & Wilson,* for appellant:

Appellant had a right to adopt its present corporate name and to be protected in its exclusive use even though a part thereof consisted of the geographical word "Nebraska." (*Newby v. R. Co.,* Deady [U. S. C. C.], 609.) Regarding the name simply as a trade-mark, appellant has this right. (*Newman v. Alvord,* 59 N. Y., 189; *Congress, etc., Spring Co. v. High Rock Congress Spring Co.,* 45 Id., 291; *Hier v. Abrahams,* 82 Id., 519; *McLean v. Fleming,* 96 U. S., 245; *Southern White Lead Co. v. Cary,* 25 Fed. Rep., 125; *Fleischmann v. Schuckmann,* 62 How. Pr. [N. Y.], 92; *Pierce v. Guittard,* 8 Pac. Rep., 645.) The geographical element in the name is descriptive neither of the kind of business nor of the place of its transaction, and the component words are not of such a nature nor so combined as to be common property. (*M'Andrew v. Bassett,* 10 Jur. [N. S.], 550.). Courts of equity interfere in cases of this kind, not on the ground of the exclusive right to the use of trade-marks, but on that of fraud. (*Newman v. Alvord,* and *Fleischmann v. Schuckmann, supra; Dunbar v. Glenn,* 42 Wis., 118; *Brooklyn White Lead Co. v. Masury,* 25 Barb., 416; *Anheuser-Busch Ass'n v. Piza,* 24 Fed. Rep., 149; *Matsell v. Flanagan,* 2 Abb. Pr. [N. S.], 459; *Southern White Lead Co. v. Cary,* 25 Fed. Rep., 125.) Attorney Houston, as employee of appellant, is properly joined in an action to restrain the infringement. (*Matsell v. Flanagan, supra; Estes v. Worthington,* 30 Fed. Rep., 465.)

*Houston & Baird,* for appellees:

In the cases cited by appellant, as in *Brooklyn White Lead Co. v. Masury,* 25 Barb., 416, and *Dunbar v. Glenn,* 42 Wis., 118, there was an actual sign or trade-mark to deceive the public, while in this case both companies advertise their business and there is no attempt at deception.

A name, to constitute a trade-mark, must be original or invented, merely a fancy one, or one indicating ownership or manufacture. (*Stokes v. Langraff*, 17 Barb., 608; *Corwin v. Daly*, 7 Bosw. [N. Y.], 222; *Singleton v. Bolton*, 3 Douglas [Eng. K. B.], 293; *Burgess v. Burgess*, 17 Eng. Law & Eq., 257.) No one has a right to appropriate names which another can use with equal truth for the same purpose. (*Canal Co. v. Clark*, 13 Wall., 311.) Appellant must have an exclusive right to the trade-mark or name to sustain an injunction. (*Newman v. Alvord*, 51 N. Y., 189.) A merely descriptive phrase, like the one in controversy, is not a trade-mark. (2 High on Injunctions, ch. 18.) There can be no property in a geographical name. (*Canal Co. v. Clark*, 13 Wall., 324.) Defendant Houston had no interest in the company save as an attorney, and is improperly joined.

REESE, CH. J.

This action was instituted in the district court of Lancaster county by the plaintiff, a corporation duly incorporated under the laws of this state and doing business in the city of Hastings as the "Nebraska Loan and Trust Company," against the defendants, who it is alleged were proceeding to organize a company for the transaction of business similar to that transacted by plaintiff and to be known by the same corporate name. It was alleged in the petition that plaintiff was incorporated in the year 1882 under the name of the "Nebraska Loan and Trust Company," and that it had continued in business up to the time of the commencement of the action, increasing its capital until it amounted to the sum of $500,000, all of which was paid in, and its business to about $1,000,000 annually; that its business was that of loaning money secured by first mortgages, dealing in municipal bonds, etc., and that such business had increased until, at the time of the commencement of the action, it

had extended into a number of the counties of the state, by which its business had become very profitable, and its capital stock valuable; and that by its long continuance in business, and the careful and prudent manner in which it had transacted such business as was entrusted to its care, as well as by an expensive system of advertising, it had extended its business as stated, and had built up a commercial reputation in the money centers of the east, as well as in the west, which was of great value; that the name, "Nebraska Loan and Trust Company," had become its trade name, by which its responsibility and business reputation was known by its customers and the public, and by which the name had become of great importance and value to it; that defendants, well knowing these facts, with the design and purpose of getting the benefit of plaintiff's reputation, were forming themselves into an association or copartnership and had commenced to advertise to do the business of negotiating loans secured by mortgages, buying and selling city, county, and other municipal bonds and evidences of debt, and had assumed the same corporate name of plaintiff, to-wit, "Nebraska Loan and Trust Company," and that they were seeking to carry on said business under that name and no other; that while their principal place of business was in the city of Lincoln, yet they were attempting to carry on and were advertising to do said business under said name in the same territory occupied by plaintiff; thereby defendants were wrongfully using the trade name of plaintiff, to the great injury and damage of plaintiff, and defrauding and injuring those of plaintiff's customers who might, by the fraudulent representations of defendants, be induced to give their patronage and business to them; that defendants had no capital nor credit, were without experience in the business referred to, and were wholly dependent upon the credit and reputation of plaintiff for their ability to build up a business and reputation, and, by drawing from plaintiff's business, secure to

themselves a share of its profits and emoluments. An injunction was prayed for, together with a demand for general relief. A temporary injunction was allowed. Defendant Houston answered denying any interest in the alleged new corporation, and alleging that his only connecwith the other defendants was, that he had been consulted by them as an attorney and had given such advice as was needed by them from time to time, and had been requested to act as legal adviser of the new corporation, or company. Nine and Austin answered by a general denial.

A trial was had to the district court, which resulted in a dissolution of the temporary injunction and a general finding and decree in favor of defendant. From this decree plaintiff appeals.

The evidence introduced upon the trial, in so far as it explained the purposes of the organization of plaintiff and the extent to which its business has been carried, the amount thereof transacted by it, and the capital invested, fully sustained the allegations of the petition; while that with reference to the business capacity and capital of defendants leaves some doubt in the mind as to their real purpose in the organization of the company or corporation by them. But, as we understand the case before us, there is but one question involved, and that is, whether or not the name assumed by plaintiff, to-wit, "Nebraska Loan and Trust Company," is one which they can appropriate to themselves to the exclusion of all other persons within the state and thereby render it unlawful for such person to enter into any business engagements of the kind under that name.

The words "loan and trust" are simply indicative of the character of the business which they propose to carry on, and so far as they are concerned there can be no question but that there can be no special property or right in them. So the real and only question involved is, whether or not a loan and trust company organized in any part of the state can appropriate the name of the state to its own exclusive

use, building up thereby a trade name which will be protected and to which such company will have the exclusive right, the word "Nebraska" being a geographical name. We are of the opinion that such cannot be done. In the discussion of this question we are not unmindful of the injury which can be inflicted upon plaintiff or the harm which might be done to the public by a new corporation, without financial means, organizing under the same name. That question, however, is not before us, the question simply is, whether or not the name assumed by plaintiff can be protected in equity as the exclusive property of plaintiff, and defendants enjoined from assuming the same name a hundred miles distant. The right of property in trade-marks in some cases is not to be questioned, but we know of no case which goes so far as to allow a company of persons to assume a corporate name for the transaction of the business which can be and is transacted in all parts of the state — one as well as another — and appropriate the name of the state to the exclusion of all others in all parts thereof and thus secure a property right therein.

Suppose a bank should be organized in the state as "The State Bank of Nebraska," and as such should extend its business until it became ever so strong a factor in the finances of the state, yet it could scarcely claim the right to thus appropriate the name of the state to the exclusion of all other banks therein. As a general rule geographical names are not the subject of property as a trade name. It is true there are exceptions, among which is *Newby v. Oregon Central Railroad Company,* Deady's U. S. C. C., 609. In that case, while the name assumed by the original Oregon Central Railroad Company contains the name of the state, yet by the addition of the word "Central" the location of the road was thereby indicated and the geographical character of the name was avoided. It would seem also that the argument in favor of the right would apply with much greater force in the case of a railroad company than in the ordinary

commercial transactions of the kind referred to in the plaintiff's petition. In the former case it might be presumed that the lines of the road would traverse the whole state, and that they would necessarily cross each other; the cars being of uniform manufacture and color, when designated with the same initial letters, would be quite difficult of identification; and many other reasons could suggest themselves to the mind in favor of applying the rule stated. But these conditions cannot be applied to the case at bar. The business is carried on mainly by correspondence, and, as we have said, the offices are near one hundred miles distant from each other—one in Hastings, the other in Lincoln. There could be but little, if any, danger of confusion through the mails by the wrong delivery of mail matter. The letters sent out by either party would designate the office from which they came. Again, it cannot be that the same reason for the rule exists in cases of this kind as in cases of trade-marks. In trade-mark cases there is a commodity manufactured or in some way prepared for the general market. In such cases it is due both to the public and to the first manufacturer that, if he furnish a superior quality of goods or wares, the former be protected from fraudulent imitations, the latter from the destruction of a trade he has built up at great expense and labor, and by honesty in his manufactures. The products of the new enterprise should stand upon their own merits in their race for favor in the markets to which they are sent.

In *Congress and Empire Spring Company v. High Rock Spring Company*, 45 N. Y., 291, an injunction was granted against the defendant from bottling and placing upon the market a water with a name similar to that of the water bottled and sold by the plaintiff. The plaintiff was the owner of what was denominated the "Congress Spring" property in Saratoga, and for a number of years it had been engaged in bottling and selling "Congress Water." The defendant was organized as "The High

33

Rock Congress Spring Company" and was engaged in bottling and selling "High Rock Congress Spring Water," and so labeling its products. An injunction was allowed for the reason that the word "Congress," from long use by the plaintiff, became its legitimate property as a trademark and as indicating the origin and ownership of the water flowing from the Congress spring. *Hier v. Abrahams*, 82 Id., 519, was to restrain the defendant from the appropriation of a trade-mark upon the label of manufactured cigars, and an injunction was allowed. *Pierce v. Guittard*, 8 Pac. Rep., 645, was to restrain an infringement upon a trade-mark used for manufactured chocolate, and the same principles were held to apply. The rule applied to the above cases runs through the line of cases where the manufactured or prepared product is placed upon the open market in competition with other articles of the same character or kind. But we think it does not apply to the case at bar. In this case a different principle is involved. The damages, if any, inflicted upon the public could not be by the devices referred to. The place of business of defendant being so remote from plaintiff would seem to preclude the idea of such damage resulting to plaintiff, considering the character of the business in which the parties desire to engage. The nature of the business transacted by the companies is such that, considering the distance between their principal offices, there can be no substantial conflict of interest. Before plaintiff can enjoin defendants this conflict would have to be shown, and that the establishment of the new company in business in Lincoln would be to practice a deception upon those who used ordinary care in the conduct of their business transactions. (Cox's Manual of Trade-mark Cases, numbers 618, 619, 236, 237; *Canal Co. v. Clarke*, 13 Wall., 311.)

The decree of the district court is affirmed.

DECREE AFFIRMED.

THE other Judges concur.