EDMONDSON VILLAGE THEATRE, INC. *v.*
EINBINDER

[No. 177, October Term, 1954.]

40

*Decided July 27, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Paul F. Due,* with whom were *Due, Nickerson, Whiteford & Taylor* on the brief, for appellant.

*John E. Raine, Jr.,* for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Edmondson Village Theatre, Inc., lessee of Edmondson Village, Inc., has been operating a moving picture theatre under the name of "Edmondson Village Theatre" in Edmondson Village, a shopping center on Edmondson Avenue in Baltimore, since June, 1949. In May, 1954, Joseph Y. Einbinder opened a drive-in moving picture theatre in Baltimore County under the name of "Edmondson Drive-In Theatre" about three miles west of the shopping center. Edmondson Village Theatre, Inc., thereupon entered suit in the Circuit Court for Baltimore County to enjoin Einbinder from using the name "Edmondson Drive-In Theatre."

Complainant alleged in its bill of complaint that Edmondson Village Theatre is a first-run neighborhood

theatre with 1,205 seats; and that it has spent large sums of money in advertising it and has built up a valuable good will; that the name of defendant's theatre bears a confusing similarity to the name of complainant's theatre, and many people have been confusing them; that defendant's theatre is located on the Baltimore National Pike (U. S. Route 40), and there was no reason for using the name of "Edmondson" except to confuse the public and appropriate a part of complainant's good will; that complainant requested defendant to stop using the name "Edmondson Drive-In Theatre," but he refused to do so; and that the use of that name constitutes unfair competition and will continue to cause complainant irreparable loss and damage unless defendant is enjoined by the Court.

Defendant alleged in his answer to the bill that the Baltimore National Pike is also commonly called the New Edmondson Boulevard; that the Edmondson Drive-In Theatre will not be confused with the Edmondson Village Theatre, as the former is an outdoor theatre where patrons look at the moving pictures from their automobiles, while the latter is an indoor theatre; and that he has had no intention to appropriate any of complainant's good will, as the name "Edmondson" is used by many types of business in that locality.

Complainant presented evidence at the trial of the case to show that the Edmondson Village Theatre had established a reputation for excellence of accommodations and had built up a large patronage. Defendant did not dispute complainant's claim that its theatre is an attractive one with modern equipment; but he asserted that his theatre also is a fine theatre of its kind. He stated that he had graded, surfaced, and marked the tract of land for the parking of automobiles; had installed underground wiring to carry the sound of the pictures to speakers installed on the metal posts beside each car space; and had erected a box office and a substantial building to house the business office, projection equipment and refreshment concessions.

Isadore K. Makover, manager of the Edmondson Village Theatre, testified that Edmondson Village covers nearly twelve acres in the western section of Baltimore a short distance east of the city boundary line. He asserted that his theatre has the finest equipment of all the moving picture theatres in Baltimore. Its accommodations include a special room for young children; checking of parcels with refrigeration for perishable foods; earphones for deaf patrons; and visual paging for professional men. He also mentioned that free parking space is provided for more than 1,000 automobiles to accommodate the patrons of the theatre and the 28 stores in the shopping center.

Makover claimed that the similarity in names had caused confusion among his patrons. He produced the cashier of his theatre who said that, during the eight months following the opening of defendant's theatre, she had received 62 telephone calls, or an average of about two calls a week, from patrons who inquired about pictures which were then being shown at defendant's theatre. Makover also testified that there had been some confusion in the delivery of mail. He said that seven contracts intended for Edmondson Drive-In Theatre had been sent to Edmondson Village Theatre.

The Court found no evidence of unfair competition, and accordingly entered a decree dismissing the bill of complaint. The appeal is from that decree.

Like most doctrines of the common law, the law of unfair competition is an outgrowth of human experience. The rules relating to liability for harm caused by unfair trade practices developed from the established principles in the law of torts. These rules developed largely from the rule which imposes liability upon one who diverts custom from another to himself by fraudulent misrepresentation that the goods he is offering are the goods produced by the other. In England this type of fraud is commonly called "passing off" or "palming off" one's goods as those of another.

The American Law Institute made the following comment in 3 *Restatement, Torts,* ch. 35, pages 539, 540, on this constantly developing doctrine:

> "The law has not yet developed a complete generalized standard for measuring trade practices like the standard of reasonable care in negligence. In part this is due to differing standards of commercial morality in the various industries; in part it is due to the fact that this branch of the law developed eclectically from the law dealing with the older wrongs which were not directly related to trade practices and competition. But the tendency of the law, both legislative and common, has been in the direction of enforcing increasingly higher standards of fairness or commercial morality in trade."

While the original basis of equitable relief was the fraudulent deception of the purchaser, the United States Supreme Court, in the opinion delivered by Justice Pitney in 1918 in *International News Service v. Associated Press,* 248 U. S. 215, 39 S. Ct. 68, 71, 63 L. Ed. 211, 2 A. L. R. 293, held that "the right to acquire property by honest labor or the conduct of a lawful business" is as much entitled to protection as the right to guard property already acquired, and that it is this right that furnishes the basis of the jurisdiction in the case of unfair competition.

The essential element of unfair competition is deception, by means of which the goods of one dealer are passed off as the goods of another, and the seller receives the profit which he would not have received except for such deception. Therefore, in order to warrant a court of equity in granting an injunction to restrain unfair competition, the acts complained of must be of such a nature as to mislead and deceive the public, so that the defendant is in effect taking advantage of the good will and business reputation which the complainant has built up through service or advertising or in any manner regarded as lawful and proper. *Anheuser-Busch, Inc., v.*

*Budweiser Malt Products Corporation,* 287 F. 243, 246.

While the law of trade-marks is a part of the doctrine of unfair competition, there is a difference between them. The infringement of a trade-mark is a violation by one person of an exclusive right of another person to the use of a word, mark or symbol. On the other hand, where two rivals in business have an equal right to use the same words on similar articles sold by them, but such words were used by one of them before the other and by association have come to indicate to the public that the goods to which they applied were produced by the former, the latter will not be permitted to use them in such a manner as to deceive or be capable of deceiving the public as to the origin, manufacture or ownership of the goods to which they are applied. *Dennison Mfg. Co. v. Thomas Mfg. Co.,* 94 F. 2d 651, 659.

A trade name is any designation which is adopted and used by a person to denominate goods which he markets, or services which he renders, or a business which he conducts, or has come to be so used by others, and through its association with such goods, services, or business, has acquired a special significance as the name thereof. 3 *Restatement, Torts,* sec. 716.

One infringes another's trade name if (1) without a privilege to do so, he uses in his business, in the manner of a trade-mark or trade name, a designation which is identical with or confusingly similar to the other's trade name, though he does not use the designation for the purpose of deception, and (2) the other's interest in his trade name is protected with reference to the goods, services or business in connection with which the actor uses his designation, and the markets in which the actor uses his designation. 3 *Restatement, Torts,* sec. 717.

It has been held in some cases that the plaintiff must prove a fraudulent intent on the part of the defendant to pass off his business or goods as that of the plaintiff in order to establish unfair competition; while in other cases it has been held that proof of fraudulent intent is

not required where the necessary and probable tendency of the defendant's conduct is to deceive the public and pass off his business or goods as that of the plaintiff, especially where only preventive relief against continuance of the wrong is sought and granted. *George G. Fox Co. v. Glynn,* 191 Mass. 344, 78 N. E. 89, 92, 9 L. R. A., N. S., 1096; *Kansas Milling Co. v. Kansas Flour Mills Co.,* 89 Kan. 855, 133 P. 542; *Martell v. St. Francis Hotel Co.,* 51 Wash. 375, 98 P. 1116, 1118.

We hold that generally in cases of unfair competition, fraudulent intent is not essential for injunctive relief. The absence of fraudulent intent ought not to stay the hand of the court where a trade name is adopted so similar to a trade name already in use by a business competitor that it is obvious that injury to the original user will inevitably result. It is plain on principle that there should be no distinction in this respect between a case of unfair competition and a case of infringement of a trade-mark. As Justice Holmes said in an unfair competition case in the Supreme Judicial Court of Massachusetts: "The principles upon which the rights of the parties are to be determined are similar to those which are well known to govern trademarks, although the combination of elements is more complex than in devices which commonly go by that name." *New England Awl & Needle Co. v. Marlborough Awl & Needle Co.,* 168 Mass. 154, 155, 46 N. E. 386.

It is a general rule, subject to exceptions, that a geographical, locational or place name is common property and cannot be appropriated as the subject of an exclusive trade-mark or trade name. But where a geographical name acquires a secondary meaning indicating not only the place of production but also the producer and the quality of his product, the owner may assert an exclusive right to the name against all persons who are not doing business within the geographical limits, and even against persons within the geographical limits if the name has been used fraudulently to mislead purchasers. It has thus been held that the use of the name of a place may

ordinarily be protected where it indicates the origin and ownership of medicinal waters; but where a name has become a generic one for mineral waters of a certain type, coming from a more or less extensive district, it cannot be the subject of exclusive use. *La Republique Francaise v. Saratoga Vichy Spring Co.*, 191 U. S. 427, 24 S. Ct. 145, 48 L. Ed. 247; *Saxlehner v. Wagner*, 216 U. S. 375, 30 S. Ct. 298, 54 L. Ed. 525.

The question whether the name of a business embodying a geographical name is so similar to the name of a previously established business as to warrant a court of equity in issuing an injunction against its use depends upon the character of the business and its relation to the geographical term. After these facts are determined, the question is whether the similarity is such as would be likely to mislead purchasers of ordinary prudence and caution into the belief that the goods are those of the business rival. *Kansas Milling Co. v. Kansas Flour Mills Co.*, 89 Kan. 855, 133 P. 542; *Nebraska Loan & Trust Co. v. Nine*, 27 Neb. 507, 43 N. W. 348, 350.

In the case of a theatre, as in the case of a hotel, the good will of the business is not necessarily local, and the name used on it is not in all instances inseparable from it. The solution of each case depends upon its particular facts, and it becomes necessary to ascertain what the actual meaning of the name has come to be and also the intention of the parties to any contract relating to the business. 1 *Nims, Unfair Competition and Trade-Marks*, 4th Ed., sec. 21.

*O'Grady v. McDonald*, 72 N. J. Eq. 805, 66 A. 175, is an illustration of unfair competition. The complainant in that case was the owner of a hotel which was located on Arkansas Avenue in Atlantic City, and which had been known for twelve years as "The Hotel Dominion." The defendant, after conducting the hotel as lessee for one year, built another hotel on the same avenue only a few hundred feet away under the name of "The New Dominion." The Court of Chancery of New Jersey held that the complainant was entitled to an injunction, be-

cause the name chosen by the defendant was likely to mislead the public and help to procure guests who had patronized the old hotel.

In the progressive development of the doctrine of unfair competition, as an embodiment of the principles of fair dealing in business, the courts are called upon to make careful discrimination between those acts which may be done and those which may not be done in the course of rivalry in business. As it was stated by this Court in *Drive It Yourself Co. v. North,* 148 Md. 609, 130 A. 57, 43 A. L. R. 206, the courts are solicitous to prevent unfair competition in business, and to protect against unfair practices those persons who have established and developed a business or product stamped in the public mind with the impress of the builder's skill or reputation; but the courts are equally solicitous to encourage fair competition and thereby protect the public against the evils of monopolies. The courts must be careful to guard against extending the meaning of "unfair competition" to cover acts which may be unethical yet not illegal. It may be unethical, for instance, for a dealer to take advantage of the advertising of his competitor, but in many cases his doing so would not be illegal.

In *Elgin Butter Co. v. Elgin Creamery Co.,* 155 Ill. 127, 140 N. E. 616, 618, the Court refused to grant an injunction. The controversy in that case was between two Illinois corporations. One corporation was formed in 1882 under the name of Elgin Butter Company. The other was formed in 1891 under the name of Elgin Creamery Company. The Elgin Butter Company alleged that its name had been extensively circulated on its letter heads and price lists as well as by advertisements among the trade throughout the United States; and that no other person or corporation could lawfully use the name, or any substantial portion or similitude thereof, in such a way as to have a tendency to mislead the public. It further alleged that the Elgin Creamery Company's use of its corporate name misled dealers and the public at large into the false belief that Elgin Creamery Company was the same as Elgin Butter Company; and that complain-

ant's business and good will would be lost or impaired unless the Court granted an injunction.

The Supreme Court of Illinois stated that the complainant had not acquired a monopoly of the use of the word "Elgin," and that the name "Elgin Creamery Company" is quite different from the name "Elgin Butter Company," and ordinary attention would enable any person to discriminate between them. The Court spoke as follows in reference to the right of each corporation to use its corporate name:

> "Even if the corporate names of the two corporations are somewhat similar, yet, in the absence of any intent, act, or artifice to mislead dealers in the market or the public at large as to the identity of the corporations, the Elgin Creamery Company has the same right to use its corporate name in the transaction of its business that the Elgin Butter Company has to use its corporate name. It would seem that the same rule should apply to corporations in this regard that obtains in respect to natural persons; and, in the absence of any fraudulent or wrongful intention or act, or any contract to prohibit it, every natural person has the absolute right to his own name in his own business."

Complainant relied upon the decision rendered by this Court in 1943 in *Baltimore Bedding Corporation v. Moses,* 182 Md. 229, 34 A. 2d 23, 338. But that case is readily distinguishable from the case before us. There the complainants were partners who had operated a bedding manufacturing business for more than 25 years under the trade name of "Baltimore Spring Bed Company," and had established a reputation for the excellence of their product. The defendant entered the same kind of business upon its incorporation in 1942. It advertised that it had "39 years experience," and it had the word "Baltimore" printed in its advertisements in the same form of script that the partnership had used for many years. This Court was not convinced by the reasons given for the adoption of defendant's name, and held that defend-

ant's advertisements were so inaccurate and misleading as to indicate that its purpose was to deceive the complainants' customers. The Court accordingly found that the defendant was engaged in unfair competition. It gave approval, however, to the condition of the decree which allowed the defendant to continue the use of the corporate name provided that it adopted a disclaimer of any connection with the partnership business.

The situation in the instant case is entirely different. While it is true that complainant alleged in its bill of complaint that defendant was deceiving the public and diverting customers from the Edmondson Village Theatre, there was no evidence to show that defendant had been misleading any patrons and inveigling them into driving into the outdoor theatre when they were looking for the indoor theatre. While there was some confusion in telephone calls and correspondence between the two theatres during the first eight months, it is not reasonable to believe that any person with ordinary intelligence would have much difficulty in distinguishing between the indoor theatre in Edmondson Village and the outdoor theatre three miles to the west. Moreover, these two theatres do not show the same moving pictures at the same time. Complainant said that there were several patrons who had presumably misread defendant's advertisements and were disappointed when they learned that the pictures they wanted to see were being shown in the drive-in theatre and not in the Edmondson Village Theatre. However, there was no evidence whatever that any patron drove into the drive-in theatre to see a picture which was being shown in the Edmondson Village Theatre.

Complainant complained because defendant's theatre was listed in the Baltimore telephone directory as "West 40 Drive-In Theatre," and in the Baltimore County telephone directory as "Joseph Y. Einbinder, Drive-In," while he was advertising under the name of "Edmondson Drive-In Theatre." Defendant explained that, while his theatre is located on the Baltimore National Pike, designated as U. S. Route 40, this highway is also com-

monly known by other names. He presented a list of restaurants, filling stations, and other business establishments whose addresses were given in the telephone directory as Edmondson Boulevard, or New Edmondson Avenue, or Edmondson Avenue Extended. He also showed that the State Roads Commission had described certain real estate in an advertisement of sale in the Baltimore Sun as fronting on "Edmondson Avenue Extended, U. S. Route 40." Therefore, it cannot be said that defendant's advertisements were misleading and deceptive.

Defendant swore positively that he never attempted in any of his advertisements to mislead the public to believe that there was any connection between the two theatres. It appeared that some of his advertisements contained the following description of his location: "Route 40, Dual Highway, 3 miles west of Edmondson Village." But he explained that he inserted that direction merely because Edmondson Village is a widely known shopping center and the statement of the distance was the most convenient way to describe his location. We agree with the Court below that there was no more indication of an intention to deceive the public in that announcement than if he had announced that his theatre is located a certain distance west of Towson.

Complainant also complained because the Baltimore Evening Sun placed "Edmondson Drive-In Theatre" above "Edmondson Village Theatre" in its list of moving picture theatres. That list is published by the Sun gratuitously as a service to theatre-goers, and the theatres are listed alphabetically. Defendant's theatre appears above complainant's theatre simply because the letter "D" stands in the alphabet before the letter "V."

As complainant did not have exclusive right to use the word "Edmondson," and there was no evidence that defendant's advertisements were misleading, the evidence failed to sustain the allegation of unfair competition. The decree of the Court below dismissing the bill of complaint will therefore be affirmed.

*Decree affirmed, with costs.*