**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 09-1639

MARVIN J. PERRY, INC.,

Plaintiff - Appellant,

v.

HARTFORD CASUALTY INSURANCE COMPANY,

Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Roger W. Titus, District Judge. (8:08-cv-00138-RWT)

Argued: October 28, 2010          Decided: February 25, 2011

Before MOTZ, AGEE, and WYNN, Circuit Judges.

Affirmed by unpublished opinion. Judge Wynn wrote the opinion, in which Judge Motz and Judge Agee joined.

**ARGUED:** Clifton Merritt Mount, JACKSON & CAMPBELL, PC, Washington, D.C., for Appellant. Jody Manier Kris, WILMERHALE, Washington, D.C., for Appellee. **ON BRIEF:** Gregory Lee VanGeison, ANDERSON, COE & KING, LLP, Baltimore, Maryland; Jeremy DuQuesnay Dresner, WILMER CUTLER PICKERING HALE AND DORR, LLP, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Under Maryland law, "[i]t is generally true that an insurer has no duty to defend a cause of action against an insured if that cause of action asserts liability on the part of the insured that comes within an exclusion in the insurance policy."[1] Plaintiff Marvin J. Perry, Inc. ("MJP") contends that its business liability insurer, Defendant Hartford Casualty Insurance Company ("Hartford Insurance"), breached its contractual duty to provide a defense in an action brought against MJP. Because the underlying action involved only claims falling within an express contractual exclusion to Hartford Insurance's duty to defend, we affirm the district court's grant of summary judgment for Hartford Insurance.

I.

MJP filed this action in an attempt to recover fees and costs incurred while defending a lawsuit brought against MJP by Perry & Wilson, Inc. ("P&W").[2] That suit ended in a settlement agreement, and the matter before us concerns whether Hartford Insurance, by allegedly breaching its duty to defend, is

---

[1] Government Employees Ins. Co. v. Ropka, 74 Md. App. 249, 257, 536 A.2d 1214, 1218 (1987), cert. denied, 312 Md. 601, 541 A.2d 964 (1988).

[2] The case was originally filed in Circuit Court for Montgomery County, Maryland, but was removed to federal district court on January 16, 2008.

2

responsible for the defense expenses incurred by MJP before settlement with P&W. See Bankers & Shippers Ins. Co. of N.Y. v. Electro Enters., Inc., 287 Md. 641, 649, 415 A.2d 278, 283 (1980) ("[W]henever an insured must conduct his own defense at his own expense as a result of an insurer's breach of a contractual duty to defend its insured, the insured may recover the expenses of that defense from the insurer."). Hartford Insurance asserted that an exclusion in MJP's insurance policy relieved it of any duty to defend MJP against the suit brought by P&W.

Following the filing of cross-motions for summary judgment by the parties, the district court issued an order granting Hartford Insurance's motion. The court reasoned in a memorandum opinion that, based on the nature of the claims in the underlying suit, the "Intellectual Property Rights Exclusion" in the insurance policy relieved Hartford Insurance of the duty to defend.

On appeal, MJP contends that the district court erred by granting summary judgment because the underlying suit involved a claim for unfair competition that was not subject to the "Intellectual Property Rights Exclusion," and thus, Hartford Insurance had a duty to defend. We disagree.

## II.

It is well established that our review of a grant of summary judgment is *de novo*. French v. Assurance Co. of Am., 448 F.3d 693, 700 (4th Cir. 2006). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id.; Fed. R. Civ. P. 56(c).

Additionally, we must apply Maryland law because the action was removed to the District of Maryland based on diversity, and Hartford Insurance issued its policy to MJP in Maryland. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941) (holding that a federal court exercising diversity jurisdiction must apply the choice of law principles of the state in which the federal court is located); Glaser v. Hartford Cas. Ins. Co., 364 F. Supp. 2d 529, 531 n.2 (D. Md. 2005) (indicating that in Maryland, the law used to construe an insurance policy is that of the state where the policy was delivered and premiums were paid).

## III.

An insurer's contractual duty to defend arises from the terms of the insurance policy. Litz v. State Farm Fire & Cas. Co., 346 Md. 217, 225, 695 A.2d 566, 569 (1997); see also Brohawn v. Transamerica Ins. Co., 276 Md. 396, 409, 347 A.2d

4

842, 851 (1975) ("The promise to defend the insured, as well as the promise to indemnify, is the consideration received by the insured for payment of the policy premiums.").

"The obligation of an insurer to defend its insured under a contract provision . . . is determined by the allegations in the tort actions. If the plaintiffs in the tort suits allege a claim covered by the policy, the insurer has a duty to defend." Brohawn, 276 Md. at 407, 347 A.2d at 850. Indeed, "[e]ven if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy." Id. at 408, 347 A.2d at 850.

> In determining whether a liability insurer has a duty to provide its insured with a defense in a tort suit, two types of questions ordinarily must be answered: (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage?

St. Paul Fire & Marine Ins. Co. v. Pryseski, 292 Md. 187, 193, 438 A.2d 282, 285 (1981).


A.   The Policy And The Applicable Exception

"In answering the first *Pryseski* inquiry, we focus on the terms of the insurance policies themselves to determine the scope and limitations of their coverage." Aetna Cas. & Sur. Co.

5

*v. Cochran*, 337 Md. 98, 104, 651 A.2d 859, 862 (1995).  We construe the insurance policy according to contract principles.  See *Litz*, 346 Md. at 224-25, 695 A.2d at 569.  Thus, we must afford the contract terms their "customary, ordinary, and accepted meaning."  See *Lloyd E. Mitchell, Inc. v. Maryland Cas. Co.*, 324 Md. 44, 56, 595 A.2d 469, 475 (1991).  "Maryland does not follow the rule that insurance policies should, as a matter of course, be construed against the insurer."  *Dutta v. State Farm Ins. Co.*, 363 Md. 540, 556, 769 A.2d 948, 957 (2001).[3]  "To determine the intention of the parties to the insurance contract, which is the point of the whole analysis, we construe the instrument as a whole."  *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486, 488 (1985) (citations omitted).

Mindful of these principles of construction, we begin by noting that MJP's insurance policy provided that Hartford Insurance:

> will pay on behalf of the insured those sums that the
> insured becomes legally obligated to pay as damages

---

[3] Nonetheless, "[i]f the language is ambiguous, extrinsic evidence may be consulted[,]" *Collier v. MD-Individual Practice Ass'n, Inc.*, 327 Md. 1, 6, 607 A.2d 537, 539 (1992), and "if ambiguity is determined to remain after consideration of extrinsic evidence, 'it will ordinarily be resolved against the party who drafted the contract,' where no material evidentiary factual dispute exists." *Clendenin Bros., Inc. v. U.S. Fire Ins. Co.*, 390 Md. 449, 459-60, 889 A.2d 387, 394 (2006) (quoting *Collier*, 327 Md. at 6, 607 A.2d at 539).

because of . . . "personal and advertising injury" to which this insurance applies. [Hartford Insurance] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [Hartford Insurance] will have no duty to defend the insured against any "suit" seeking damages for . . . "personal and advertising injury" to which this insurance does not apply.

The policy defined "personal and advertising injury" as injury arising out of, *inter alia*, "[c]opying, in your 'advertisement' a person's or organization's 'advertising idea' or style of 'advertisement.'" "Advertisement" is defined to include "the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through . . . [t]he Internet." "'Advertising idea' means any idea for an 'advertisement[.]'"

Thus, the policy obligates Hartford Insurance to defend against *some* suits alleging advertising injury. But the policy also states, in what the district court called the Intellectual Property Rights Exclusion, that the "insurance does not apply to . . . 'personal and advertising injury' . . . [a]rising out of any violation of any intellectual property rights, such as patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity." Under Maryland law, "where the insurer properly and unambiguously uses language in its exclusion, the clear and specific terms must be enforced . . . ." <u>Megonnell v. United Servs. Auto. Ass'n</u>, 368 Md. 633,

7

656, 796 A.2d 758, 772 (2002) (quoting Eric Mills Holmes & Mark S. Rhodes, *Holmes's Appleman on Insurance, 2d* 276-81 (Eric Mills Holmes ed., vol. 2 § 7.2, West 1996)).

In Superformance Int'l, Inc. v. Hartford Cas. Ins. Co., 332 F.3d 215 (4th Cir. 2003), this Court interpreted an exclusion almost identical to that at issue in this case as relieving Hartford Insurance of the duty to defend claims of unfair competition claims based on, *inter alia*, trademark infringement. Id. at 222-24.[4] Other circuits have also recognized similar exclusions as relieving an insurer of the right to defend claims alleging trademark violations. See, e.g., Native Am. Arts, Inc. v. Hartford Cas. Ins. Co., 435 F.3d 729, 732-35 (7th Cir. 2006) (holding that clause excluding coverage for injury "[a]rising out of any violation of any intellectual property rights" relieved Hartford Insurance of duty to defend suit alleging mislabeling of products and trademark violations); Parameter Driven Software, Inc. v. Mass.

---

[4] In its reply brief, MJP attempts to distinguish Superformance based on the nature of the underlying dispute. However, the nature of the dispute is not why Superformance is relevant to this case. Rather, Superformance provides useful guidance insofar as the Court interpreted the "trademark exclusion" (containing almost identical language to that constituting the "Intellectual Property Rights Exclusion" at issue here) to apply to all claims based on trademark violation. In other words, Superformance provides support for Hartford Insurance's argument that if the unfair competition claim stems from a trademark violation, it is excluded under the policy.

8

Bay Ins. Co., 25 F.3d 332, 337 (6th Cir. 1994) (holding that because "[a]ll four counts of [the] complaint were based upon [the insured's] use of the trademark," policy exclusion for advertising offenses "arising out of . . . infringement of trademark" applied to relieve insurer of duty to defend).

Accordingly, we answer the first Pryseski inquiry by concluding that the language of the Intellectual Property Rights Exclusion establishes that Hartford Insurance is relieved of its duty to defend under the policy when a suit brought against the insured contains only allegations arising out of trademark or trade name violations.

B.   The Allegations In The Underlying Tort Action

Next we address the second Pryseski inquiry, which we use to determine whether the allegations in the underlying action potentially fall within the scope of coverage for "advertising injury," as limited by the Intellectual Property Rights Exclusion.

In the underlying suit, P&W alleged "unfair competition by infringement of common-law rights" (Count One) as well as dilution and diminishment of P&W's "famous mark" in violation of the Lanham Act (Count Two).  MJP concedes that Count Two did not trigger Hartford Insurance's duty to defend but contends that Count One did.  Specifically, MJP argues that the complaint

9

alleged an unfair competition cause of action that (1) arose from MJP's internet marketing activities—thus qualifying as "advertising injury," and (2) did not arise from a violation of P&W's intellectual property rights—and therefore did not fall under the Intellectual Property Rights Exclusion.  To determine the merit of MJP's argument, it is useful to examine the nature of unfair competition claims under Maryland law before considering whether such a claim was raised in P&W's complaint.

Unfair competition is generally defined in Maryland as "damaging or jeopardizing another's business by fraud, deceit, trickery or unfair methods."  Baltimore Bedding Corp. v. Moses, 182 Md. 229, 237, 34 A.2d 338, 342 (1943).  It consists of attempting to pass the goods or business of one person off as those of another, either by an express or implied public representation to that effect.  Edmondson Vill. Theatre v. Einbinder, 208 Md. 38, 44, 116 A.2d 377, 380 (1955).[5]  To

---

[5] The Einbinder court explained:

> Like most doctrines of the common law, the law of unfair competition is an outgrowth of human experience. The rules relating to liability for harm caused by unfair trade practices developed from the established principles in the law of torts. These rules developed largely from the rule which imposes liability upon one who diverts custom from another to himself by fraudulent misrepresentation that the goods he is offering are the goods produced by the other.

208 Md. at 43, 116 A.2d at 379.

10

constitute unfair competition, "the acts complained of must be of such a nature as to mislead and deceive the public, so that the defendant is in effect taking advantage of the good will and business reputation which the complainant has built up through service or advertising or in any manner regarded as lawful and proper." Id.

As recognized by Maryland courts, the doctrine of unfair competition is not limited to actions based on a violation of trademark. Moses, 182 Md. at 236, 34 A.2d at 342; see also Einbinder, 208 Md. at 45, 116 A.2d at 380 ("While the law of trade-marks is a part of the doctrine of unfair competition, there is a difference between them.").[6] However, the mere

---

[6] The doctrine was expanded beyond trademark violation at least in part on the theory that, even when there has not been a technical trademark violation, the law must protect Business A from Business B's improper appropriation of the goodwill associated with a word, mark, or symbol of Business A. The Einbinder court stated:

> The infringement of a trade-mark is a violation by one person of an exclusive right of another person to the use of a word, mark or symbol. On the other hand, where two rivals in business have an equal right to use the same words on similar articles sold by them, but such words were used by one of them before the other and by association have come to indicate to the public that the goods to which they applied were produced by the former, the latter will not be permitted to use them in such a manner as to deceive or be capable of deceiving the public as to the origin, manufacture or ownership of the goods to which they are applied.

208 Md. at 45, 116 A.2d at 380 (citation omitted).

11

possibility that an unfair competition claim *can* exist independent of an allegation of trademark violation does not mean that an independent claim was raised in P&W's complaint.

Turning now to an examination of the underlying tort action, we focus initially on MJP's contention that the complaint and excerpts from deposition testimony[7] combine to evidence a claim for unfair competition based on the misappropriation of the "style of advertising of P&W" rather than a violation of P&W's intellectual property rights.

P&W's complaint alleged that in December 1993, MJP formally transferred its furniture dealing business to P&W. Before the transfer to P&W, MJP operated as both a furniture manufacturer's representative and a furniture dealer. As explained in P&W's complaint, "[a] furniture manufacturer's representative is merely an agent (generally paid on commission) for a furniture

---

[7] Maryland law permits the consideration of extrinsic evidence proffered by the insured when necessary to determine if there is a potentiality of coverage under an insurance policy. Aetna, 337 Md. at 111-12, 651 A.2d at 866; Walk v. Hartford Cas. Ins. Co., 382 Md. 1, 12, 852 A.2d 98, 104 (2004) ("[I]n Maryland, an insurer's duty to defend is not determined solely by the eight corner rule (reviewing the complaint and policy) but rather includes consideration of extrinsic evidence."); see also Montgomery Cnty. Bd. of Educ. v. Horace Mann Ins. Co., 383 Md. 527, 538, 860 A.2d 909, 915 (2004) (stating that "at least where the underlying complaint in the tort action neither conclusively establishes nor conclusively negates a potentiality of coverage, an insurer must examine any relevant extrinsic evidence brought to its attention that might establish a potentiality of coverage").

manufacturer which contracts in its own name.   A furniture dealer contracts and sells furniture in its own name."  The 1993 transfer was of the "furniture dealer" portion of MJP's portfolio; MJP retained certain "manufacturer's representative" contracts.

As part of the transfer, P&W became the owner of the assets of the furniture dealing business, including the trade name "Marvin J. Perry & Associates."  The complaint noted that since the transfer, P&W has continued to do business with the federal government using the trade name "Marvin J. Perry & Associates." P&W has also registered its logo, including the trade name "Marvin J. Perry & Associates" as a trademark in Maryland. Further, according to the complaint "[s]ince 1993, [P&W] has spent considerable sums of money and devoted great effort to advertise and publicize the trade name 'Marvin J. Perry & Associates' to its primary customer, the federal government."

The complaint also alleged that in 1999 P&W registered the internet domain name "marvinjperry.com" and used it to operate a website for Marvin J. Perry & Associates.  Because the federal government required internet publication of the price lists of the manufacturers represented by MJP, and because MJP did not yet have a website, P&W allowed MJP to post the price lists for the manufacturers MJP represented on marvinjperry.com. However, in 2002, an MJP employee "updated the website in a way

13

that gave the appearance that there was one entity, Marvin J. Perry & Associates, which was engaged in both furniture dealer and manufacturer's representative business." Despite P&W's objections, no changes were made to differentiate the businesses. Later, in 2005, an employee of MJP allegedly "accessed the marvinjperry.com website without authorization and unlawfully removed all contact information for [P&W's] business, operating as Marvin J. Perry & Associates, and substituted contact information for [affiliates of MJP], as if they were the business trading as 'Marvin J. Perry & Associates' and owner of the website."

The complaint, in Count One, stated that "[t]he mark 'Marvin J. Perry & Associates' has come to indicate to purchasers that they are purchasing goods and services from the company that has used the name and been an authorized government contractor in that name since the mid-1970s, and in fact that they are purchasing the goods and services from [P&W] doing business as Marvin J. Perry & Associates." P&W further alleged that "as indicated by defendants' alterations to the website . . . defendants are attempting to deceive purchasers by their use of the name 'Marvin J. Perry & Associates.'"

Notwithstanding that the common theme of the complaint is P&W's frustration at MJP's attempts to use the Marvin J. Perry & Associates trade name and registered trademark, MJP contends

14

that Count One asserted an unfair competition action that was based on MJP's misleading use of "P&W's style of advertising" on the internet. Hartford Insurance concedes that an injury arising from MJP's web advertising would qualify as an "advertising injury" under the policy. Thus, the dispositive question for this Court is whether P&W asserted an unfair competition claim that did not arise out of a violation of P&W's trademark or trade name.

Notably, Count One is captioned "Unfair Competition by Infringement of Common-Law Rights" and includes six separate paragraphs discussing the "Marvin J. Perry & Associates" mark. Nonetheless, MJP points out that under Count One, P&W alleged that the "acts of [MJP] constitute unfair competition and an infringement of plaintiff's common-law rights in the mark 'Marvin J. Perry & Associates.'" MJP asserts that the use of the conjunction "and" indicated that P&W was raising unfair competition claims independent of its trademark infringement claim.

MJP argues that P&W was concerned, at least in part, with how the "style" of advertising, rather than the use of the trademark "Marvin J. Perry & Associates," deceived consumers into thinking the two businesses were one entity. Specifically, MJP contends that P&W's complaint asserted a claim for unfair competition arising out of MJP's use of a website to advertise

15

"in the same style as [P&W's], 'project categories,' 'contract categories,' separate contact information, and companies represented by each litigant." This contention is belied by the clear language of the complaint indicating that P&W was concerned with how, by making "alterations to the website, . . . defendants [were] attempting to deceive purchasers by their use of the name 'Marvin J. Perry & Associates.'"

Indeed, the complaint itself makes no reference to project categories, contract categories, or the specific companies represented by each litigant. Furthermore, there is no indication as to how the style of P&W's website had developed a meaning such that utilizing a similar style would constitute unfair competition. Instead, the complaint makes clear that the reason that the web presentation was potentially confusing to customers was because the trade name "Marvin J. Perry & Associates" and trademarked logo containing the same were utilized throughout the website.

MJP's citation of the deposition testimony of Malcolm Wilson, P&W's designee, does little to advance its argument to the contrary. When asked why he was dissatisfied with the marvinjperry.com website after it was altered by an MJP employee, Wilson replied "[b]ecause it created a vision that we were all one company." Wilson reiterated that even after some changes in 2004, the website "still didn't adequately separate

16

the two companies." This testimony merely reinforces the notion that the claims arose out of a concern about confusion in the market. Nothing in Wilson's testimony indicated whether the feared confusion arose from the general "style" of the website or instead from the use of the Marvin J. Perry & Associates name throughout the website.

MJP also referenced the deposition testimony of Howard Yeager, its own managing director, as support for the contention that similarity in website style created the market confusion giving rise to P&W's unfair competition claim. Brief of Appellant at 8. Yeager testified as to how a consumer visiting P&W's website could access information regarding various project categories and contract categories in which P&W or MJP were involved. But nothing in Yeager's testimony indicates that the market confusion complained of by P&W arose out of anything other than a violation of P&W's intellectual property rights.

Likewise, MJP's reference to the settlement agreement between the parties in the underlying suit provides scant support for its argument. MJP attempts to distinguish the supposed "website style" claims from the trademark claims by noting that, in the settlement agreement, there were separate paragraphs detailing the transition of the domain name to MJP's website. Yet the fact that the settlement contemplated reassignment of the domain name "MarvinJPerry.com" only

17

underscores that the underlying suit was not about "website style" but rather an infringement on right to use the trade name "Marvin J. Perry & Associates."[8]

Indeed, the bulk of the settlement agreement concerned the allocation of rights to names related to "Marvin J. Perry." For instance, one provision indicated that MJP would be the new owner of "a family of 'Marvin J. Perry' marks and trade names, including but not limited to Marvin J. Perry, Marvin J. Perry, Inc., and Marvin J. Perry & Associates" while another discussed a royalty-free license for P&W to use the trade name "Marvin J. Perry & Associates" for a period of 10 years. Also, there was little mention in the settlement agreement about restrictions on the style or presentation of advertisement on the internet other than a restriction on the use of certain trade names/trademarks and domain names. Further, the settlement agreement called the underlying suit "a trademark infringement action."

Ultimately, as the district court stated, "the independent unlawful conduct that caused P&W's business injury, which is the gravamen of P&W's underlying complaint and an element of the tort [of unfair competition] is based upon MJP's use of its

---

[8] This Court, in a case arising out of Maryland, has held that the unauthorized use of a trademark in an internet domain name can constitute trademark infringement when the domain name is intended to confuse internet users. See People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359 (4th Cir. 2001).

trade name, trademark, logo, and website . . . in violation of P&W's registration and ownership of that name and mark[.]" As such, any allegation of unfair competition would necessarily be excluded from coverage as a claim "arising out of any violation of any intellectual property rights, such as . . . trademark, trade name . . . or other designation of origin or authenticity."

IV.

In sum, to determine whether Hartford Insurance, the liability insurer, had a duty to provide its insured, MJP, with a defense in the underlying tort suit brought by P&W, we answer the two Pryseski inquiries as follows: (1) Under the terms of the insurance policy, although coverage is provided for some advertising injury, the Intellectual Property Rights Exclusion relieves Hartford Insurance of its duty to defend when a suit brought against MJP contains only allegations arising out of trademark or trade name violations; and (2) The allegations in the underlying action by P&W, which focused exclusively on improper use of P&W's trademark and trade name, did not potentially fall within the scope of the coverage provided. Accordingly, we hold that Hartford Insurance had no duty to defend against the underlying suit, and the district court did

19

not err by granting Hartford Insurance's motion for summary judgment.

AFFIRMED