695 A.2d 566

**David LITZ et al.,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY et al.**

**No. 36, Sept. Term, 1996.**

Court of Appeals of Maryland.

June 27, 1997.

Reconsideration Denied July 23, 1997.

Stephen P. Fitzgerald (Mudd, Mudd and Fitzgerald, on brief), La Plata, for Petitioners.

Allan A. Noble (James M. Linsao, Budow and Noble, P.C., on brief), Bethesda, for Respondents.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

RAKER, Judge.

The primary issue we must decide in this case is whether the "business pursuits" exclusion in a homeowner's liability insurance policy relieves the insurer from its duty to defend an innocent spouse who does not participate in the business pursuit of the other spouse against a suit brought by a third party who allegedly suffered injuries arising out of the business pursuit.

## I.

This appeal arises out of a declaratory judgment action filed by Respondent, State Farm Fire and Casualty Company ("State Farm") to determine its obligation to defend and indemnify Petitioners, David and Pamela Litz, in a pending tort action brought by Russell and Sharon Wright on behalf of their minor child, Stephanie. David Litz and his wife, Pamela Litz, were insured under a homeowner's policy issued by State Farm. The policy covered damage to the Litz residence and provided personal liability insurance protection. Several provisions in the policy are relevant to the matters in dispute.

Under one such provision, State Farm agreed to defend and indemnify the "insured,"[1] as follows:

COVERAGE L.—PERSONAL LIABILITY

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, we will:

\* \* \* \* \* \*

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice. . . .

Another provision, relied on by State Farm to deny coverage, which we refer to as the "business pursuits exclusion," states that liability coverage is excluded for "bodily injury . . . arising out of business pursuits of an insured." Business is defined as "a trade, profession or occupation." The final provision of importance to this case is entitled "Severability of Insurance," which states as follows:

This insurance applies separately to each insured. This condition shall not increase our limit of liability for any one occurrence.

On October 21, 1992, Mr. and Mrs. Wright, on behalf of their minor child Stephanie, filed a complaint for negligence against Pamela and David Litz in the Circuit Court for Charles County.[2] The Wright complaint alleged that on December 31, 1986, while in the care and custody of the Litzes,

---

1. The Declarations page of the State Farm insurance policy identifies as the named insured: LITZ, DAVID W. & PAMELA J.

2. Russell and Sharon Wright had previously filed a complaint on their own behalf alleging that they had been damaged by the Litzes' negligence. State Farm settled that claim with the Wrights for $8000. Russell and Sharon Wright executed a release of all claims against the Litzes on behalf of themselves only, not on Stephanie's behalf.

Stephanie suffered serious injuries due to the negligence of David and Pamela Litz.[3]

On February 22, 1994, State Farm filed a declaratory judgment action in the Circuit Court for Charles County seeking a declaration that it had no duty to defend or indemnify David Litz and Pamela Litz from the personal injury claim filed against them by the Wrights as parents of their minor daughter, Stephanie. State Farm claimed that the policy provides no insurance coverage for allegations contained in the Wright complaint because Stephanie's injuries had occurred while the Litzes were providing babysitting services. State Farm denied coverage under the "business pursuits" exclusion of the insurance policy.

The tort case was scheduled for trial on August 3, 1994, but by order of the circuit court dated July 28, 1994, was continued and reset for May 16, 1995, to allow for resolution of the declaratory judgment action. The Litzes requested that the declaratory judgment action be stayed pending final resolution of the minor's tort claim. The circuit court denied this request, and the declaratory judgment case proceeded to trial on January 25, 1995.

The circuit court concluded that "[t]he babysitting services provided by Pamela Litz [4] at the time of the alleged injury ... constitute a business pursuit as defined in the State Farm policy and as such, the business pursuits exclusion in the State Farm policy is applicable." The court continued: "As a result

---

3. The depositions taken in connection with the declaratory judgment action establish that when Stephanie was injured, Mrs. Litz had babysat for Stephanie in the Litz home for approximately four months. Stephanie was under Mrs. Litz's care on weekdays between approximately 6:00 a.m. and 4:00 p.m. and Mrs. Litz was paid weekly for her services. Mr. Litz worked for the Washington Metropolitan Area Transit Authority and was rarely at home during the hours that Mrs. Litz cared for Stephanie.

4. The court had previously ruled from the bench that, as a matter of fact, Mr. Litz "was not engaged in any business pursuit out of which this episode arose."

of the business pursuits exclusion in the policy there is no coverage for Pamela and David Litz."

The Litzes noted a timely appeal to the Court of Special Appeals. That court, by a divided panel, affirmed the judgment of the circuit court in an unreported opinion. The Court of Special Appeals held that the homeowner's policy did not extend coverage to Mr. Litz because "[t]he event itself is beyond the scope of the coverage provided, regardless of who participated in that event." The Court of Special Appeals also affirmed the circuit court's denial of attorneys' fees to Mr. Litz.

This Court granted the Litzes' petition for certiorari to consider whether State Farm owed David Litz, an apparently innocent spouse, a duty to defend and attorney's fees incurred in this declaratory judgment action. We will also consider whether the circuit court erred as a matter of law in entertaining the declaratory judgment action prior to the conclusion of the underlying tort case. We shall hold that the business pursuits exclusion of the Litzes' homeowner's liability does not exclude coverage for Mr. Litz and that State Farm had a duty to defend him. Consequently, Mr. Litz is entitled to attorney's fees incurred in defending the declaratory judgment action. Finally, we shall hold that the trial court erred as a matter of law in granting a declaratory judgment prior to resolution of the underlying tort trial.

## II.

Mr. Litz contends that the business pursuits exception should not exclude him from coverage under the policy because he did not participate in the business pursuits of his spouse. He argues that the liability coverage under the policy applies separately to each insured and, as such, the business pursuits of his wife do not deprive him of coverage under the policy. Mr. Litz further contends that the trial court erred in denying his motion for attorney's fees because he incurred attorney's fees in defending against a breach of the insurer's duty to defend. Both Mr. Litz and Mrs. Litz also maintain

that the trial court erred in entertaining the declaratory judgment action prior to the resolution of the underlying tort suit.

State Farm disputes the Litzes' interpretation of the business pursuits exclusion. State Farm contends that the exclusion denies coverage to all insureds when the injury arises out of an excluded activity, no matter who actually participated in the activity. Accordingly, State Farm denies that it is liable to Mr. Litz for attorney's fees. It has not, State Farm continues, breached its duty to defend Mr. Litz against a claim potentially within the policy's coverage because the business pursuits exclusion removes the claim from coverage. State Farm also maintains that the trial court properly entertained the declaratory judgment action prior to the resolution of the underlying tort case because the issues decided in the declaratory judgment action were independent and separate from those to be resolved at the tort trial.

### III.

It is well established in Maryland that insurance policies are construed like other contracts. "[W]hen deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself." *Bausch & Lomb v. Utica Mutual,* 330 Md. 758, 779, 625 A.2d 1021, 1031 (1993). We construe insurance policies as a whole to determine the parties' intentions. *Sullins v. Allstate Ins. Co.,* 340 Md. 503, 508, 667 A.2d 617, 619 (1995). This Court has summarized these principles of construction as follows:

Construction of insurance contracts in Maryland is governed by a few well-established principles. An insurance contract, like any other contract, is measured by its terms unless a statute, a regulation, or public policy is violated thereby. To determine the intention of the parties to the insurance contract, which is the point of the whole analysis, we construe the instrument as a whole. Maryland courts should examine the character of the contract, its purpose,

and the facts and circumstances of the parties at the time of the execution.

*Pacific Indem. v. Interstate Fire & Cas.* 302 Md. 383, 388, 488 A.2d 486, 488 (1985) (citations omitted).

## IV.

The duty to defend is broader than the duty to indemnify. *Hartford Accident v. Sherwood,* 111 Md.App. 94, 106, 680 A.2d 554, 560, *cert. granted,* 344 Md. 116, 685 A.2d 450 (1996); 7C J. APPLEMAN, INSURANCE LAW AND PRACTICE § 4684, at 83 (1979, 1996–97 Supp.). The insurer's duty to defend is a contractual duty arising out of the terms of a liability insurance policy. Judge Eldridge, writing for this Court in *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 409–10, 347 A.2d 842, 851 (1975), said:

> The promise to defend the insured, as well as the promise to indemnify, is the consideration received by the insured for payment of the policy premiums. Although the type of policy here considered is most often referred to as liability insurance, it is "litigation insurance" as well, protecting the insured from the expense of defending suits brought against him.

The duty to defend exists "even though 'the claim asserted against the insured cannot possibly succeed because either in law or in fact there is no basis for a plaintiff's judgment.' " *Id.* at 408–09, 347 A.2d at 850 (quoting *Burd v. Sussex Mutual Ins. Co.,* 56 N.J. 383, 267 A.2d 7, 10 (1970)).

This Court has also held that an insurer has a duty to defend when there exists a *"potentiality* that the claim could be covered by the policy." *Id.* at 408, 347 A.2d at 850 (emphasis in original). Under the potentiality rule, the insurer will be obligated to defend more cases than it will be required to indemnify because the mere possibility that the insurer will have to indemnify triggers the duty to defend. *Hartford Accident,* 111 Md.App. at 106, 680 A.2d at 560. One commentator has noted:

*Brohawn* and its progeny make clear that any potentiality of coverage, no matter how slight, gives rise to a duty to defend. The potentiality rule, in this regard, is perhaps better labeled the "possibility rule," and courts have characterized it as such. The defense obligation extends even to those claims filed in bad faith for the sole purpose of raising a potentiality of coverage.

Andrew Janquitto, *Insurer's Duty to Defend in Maryland,* 18 U.BALT.L.REV. 1, 13–14 (1988) (footnotes omitted).

■ A potentiality of coverage is typically established by the allegations in the tort plaintiff's complaint. *Brohawn,* 276 Md. at 407, 347 A.2d at 850. Sometimes, however, extrinsic evidence may also be used to establish a potentiality of coverage. *Aetna v. Cochran,* 337 Md. 98, 109, 651 A.2d 859, 865 (1995). When extrinsic evidence, but not the allegations of the complaint, establish a potentiality of coverage, the insured may rely on evidence outside of the complaint. *Id.,* 651 A.2d at 865. Judge Chasanow, writing for the Court in *Cochran,* explained that the insurer should not be allowed to refuse to defend based solely on allegations in the complaint because the insured is completely at the mercy of the tort plaintiff's pleadings to establish a potentiality of coverage. *Id.* at 111, 651 A.2d at 866.

## V.

■ We turn now to determine whether there is a potentiality of coverage for Mr. Litz under the Litzes' homeowner's policy. The allegations contained in the Wright's complaint alone do not create a potentiality of coverage because those allegations, if proven, would establish that Mr. Litz was engaged in a business pursuit, namely babysitting, and thus excluded from coverage. The inquiry does not end here, however, and these peculiar facts do not necessarily deprive Mr. Litz of a defense. *Cochran* teaches that the insured may rely on evidence outside the four corners of the complaint to establish the potentiality of coverage. Here, we look to the Litzes' answer to State Farm's complaint in the declaratory

judgment action. David Litz asserts in the answer that "regardless of whether or not his wife, Pamela Litz, was engaging in a 'business pursuit' out of which the alleged bodily injury arose, that he was never so engaged and as such, the purported exclusion does not apply to him." Furthermore, both Mr. and Mrs. Litz stated in depositions that Mr. Litz was not at home during the hours that Mrs. Litz cared for Stephanie and did not participate in his wife's babysitting activities.

Before we can conclude that there exists a potentiality of coverage for Mr. Litz, we must interpret the business pursuits exclusion in the policy to determine whether the business pursuits of any insured excludes all insureds from coverage under the policy. The Court of Special Appeals agreed with State Farm's contention that it was not necessary to consider whether the policy applied separately to each insured because "[t]he event itself is beyond the scope of the coverage provided, regardless of who participated in that event." Before we can decide whether the Litzes' extrinsic evidence establishes a potentiality of coverage, we must construe the business pursuits exclusion in the policy to determine whether the Court of Special Appeals was correct or whether, as Judge Hollander asserted in her dissent, the business pursuits of one insured do not exclude all insureds from coverage under the policy.

### A.

The business pursuits exception in the Litzes' insurance policy excluded coverage for injuries arising out of "business pursuits of an insured." We must decide whether the business pursuits of "an" insured were intended to deprive coverage for "all" insureds. We conclude that the business pursuits exclusion in David and Pamela Litz's homeowner's policy applies separately to each insured such that one insured's excluded activity does not preclude coverage for other insureds who did not participate in the excluded activity. This Court concluded similarly in *St. Paul Fire & Marine Insurance v. Molloy*, 291 Md. 139, 150, 433 A.2d 1135, 1140 (1981).

In our opinion, whether an innocent co-insured, notwithstanding his or her spouse's misconduct, can recover under an insurance contract, depends primarily upon whether the parties intended, and thus whether the contract contemplates, the obligations of the co-insureds to be joint or several. To hold otherwise would be to deny the parties to agreements insuring jointly owned property the ability to determine the nature of the co-insureds' contractual interests and obligations. ·

(citations omitted). *See* D. D'Antonio et al., *Protecting the Innocent*, A.B.A J., Feb. 1997, at 78 (describing "innocent co-insureds" as an insured who suffers a loss due to the other insured's wrongdoing or omission but played no role in it). We agree with the reasoning of Judge Hollander in her dissent to the Court of Special Appeals' opinion. She stated:

The policy in issue here specifically bars coverage for bodily injury arising "out of business pursuits of *an insured.*" (Emphasis added). To the extent that Pamela Litz, an *insured,* engaged in a "business pursuit," she is not entitled to coverage with respect to the tort suit. But the policy leaves open the question of whether coverage is barred for *all* policy holders or merely for the particular insured who has breached the insurance contract; the policy does not expressly state that coverage is denied to *all* insureds based on the conduct of *"an* insured." ... As I read the policy language, its plain meaning leads to the conclusion that *an* insured's business pursuits may result in the denial of coverage to that insured, but not to all other persons insured under the same policy.

*See Allstate Ins. Co. v. Worthington,* 46 F.3d 1005, 1008 (10th Cir.1995) (construing similar policy language in an exclusion); *McFarland v. Utica Fire Ins. Co.,* 814 F.Supp. 518, 525 (S.D.Miss.1992), *aff'd,* 14 F.3d 55 (5th Cir.1994) ("The language of the exclusion withholds coverage for 'an' act committed by 'an' insured, not 'an' act committed by 'any' insured. Hence, one also may reasonably conclude that the exclusion provision is directed only at the acting insured.")

Our decision in *St. Paul Fire & Marine Insurance Company v. Molloy*, 291 Md. 139, 433 A.2d 1135 (1981) supports this interpretation of the Litzes' policy. In *Molloy*, Charles and Diane Molloy were co-insureds under a fire insurance policy issued by St. Paul. The policy obligated the insureds to use all reasonable means to save and preserve the insured property. Mr. Molloy was alone in the home at the time the Molloy residence caught fire, and he was later charged with arson. St. Paul denied liability for the loss as to both Mr. and Mrs. Molloy because Mr. Molloy intentionally set the house on fire and thus violated the conditions of the policy. *Id.* at 143, 433 A.2d at 1137.

The policy in *Molloy* did not specify whether the insurance was joint or several. We held in *Molloy* that unless the insurance policy provides otherwise, an insurer's obligation " 'should be considered several as to each person insured.' " *Id.* at 153, 433 A.2d at 1142 (quoting *Howell v. Ohio Casualty Ins. Co.*, 130 N.J.Super. 350, 327 A.2d 240, 243 (Ct.App.Div. 1974)). The Court summarized:

> [W]e conclude that the trial court correctly instructed the jury that this insurance contract provides coverage for each of the name insured's interests separately, and that the alleged incendiary act of Charles does not defeat liability to Diane for her share of the loss. Consequently, Diane is entitled to be compensated for damage to her interest in the property.

*Id.* at 153, 433 A.2d at 1142.

Unlike the insurance policy in *Molloy*, the Litzes' policy contained an explicit severability of insurance clause specifying that the insurance was to apply separately to each insured. This provision is a clear reflection that the parties intended the insurance policy to provide coverage for each named insured separately. In light of this express severability clause, we construe the business pursuits exception in the Litzes' policy to mean that the business pursuits of "an" insured disqualify only that insured from coverage in the event of property damage or bodily injury resulting from the

business pursuit; other insureds, *i.e.*, those not engaging in a business pursuit, remain covered under the policy.

■ The Supreme Judicial Court of Massachusetts, in a case involving the interaction of a policy exclusion and a severability clause, described the effect of the severability clause as "requir[ing] that each insured be treated as having a separate insurance policy." *Worcester Mutual Ins. Co. v. Marnell*, 398 Mass. 240, 496 N.E.2d 158, 161 (1986). When we consider Mr. Litz and Mrs. Litz as each having separate insurance policies, we conclude that Mrs. Litz's exclusion from coverage under her policy should not affect Mr. Litz's coverage under his policy. *See* COUCH ON INSURANCE § 23:2 (3d ed. 1996) ("A common provision declares the interests of various insureds to be severable, so that a breach by one does not destroy coverage for all."). Because Mr. Litz has not engaged in any activities excluding him from coverage, he is covered by the policy. *See Worthington*, 46 F.3d at 1009 (holding that co-insured spouse not barred from coverage under homeowner's liability policy when damages caused by husband's assault on a third party are excluded from the policy); *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 840 P.2d 456, 462 (1992) (holding that co-insured parents not barred from coverage under homeowner's liability policy when damages resulting from child's intentional conduct excluded from the policy); *Marnell*, 496 N.E.2d at 160–61 (holding that co-insured parents not barred from coverage under homeowner's liability policy when damages resulting from child's automobile accident were excluded from the policy); *cf. Wedtech Corp. v. Federal Ins. Co.*, 740 F.Supp. 214, 218–19 (S.D.N.Y.1990) (holding that severability clause in directors' and officers' insurance permitted coverage for those directors and officers who had not made false representations but policy was voided for the directors and officers who made false representations).

### B.

■ We return now to potentiality of coverage. There exists a potentiality of coverage in this case. Assuming Mr.

Litz was not involved in the excluded activity, this case then is "a suit . . . against an insured for damages because of bodily injury . . . to which this coverage applies," under the terms of the general insuring provisions of his policy.[5] As to Mr. Litz, the suit by the Wrights is a suit for bodily injury free of the business pursuits exclusion, and State Farm has promised to defend him. As we noted in *Brohawn* the "obligation [to defend] is contractual and exists because of the agreement made by [the insurer and the insured]. . . . The promise to defend the insured, as well as the promise to indemnify, is the consideration received by the insured for payment of the policy premiums." *Brohawn*, 276 Md. at 408–09, 347 A.2d at 850.

If there is a possibility, even a remote one, that the plaintiffs' claims could be covered by the policy, there is a duty to defend. *See Brohawn*, 276 Md. at 408, 347 A.2d at 850; Janquitto, *supra*, at 13–14. We noted in *Cochran*, 337 Md. at 112, 651 A.2d at 866, that

> an insured cannot assert a frivolous defense merely to establish a duty to defend on the part of his insurer. Only if an insured demonstrates that there is a reasonable potential that the issue triggering coverage will be generated at trial can evidence to support the insured's assertion be used to establish a potentiality of coverage under an insurance policy.

In this case, Mr. Litz has demonstrated a reasonable potential that the issue triggering coverage, *i.e.,* that he never participated in the babysitting, will be generated at trial. We hold that the possibility that the factfinder may conclude that Mr. Litz was not involved in the babysitting creates a potentiality of coverage and entitles Mr. Litz to a defense in the underlying tort case.

---

5. As discussed above, the trial court at the declaratory judgment proceeding found as a fact that "one thing . . . is not in dispute. Mr. Litz, himself, was not engaged in any business pursuit out of which this episode arose or this injury arose." *See supra* note 4.

C.

We next address whether State Farm must pay Mr. Litz's attorney's fees incurred in defending the declaratory judgment action. Contrary to the usual American rule that the prevailing party in litigation may not recover attorneys' fees from the losing party, an insured may recover attorneys' fees incurred due to the insurer's wrongful denial of a duty to defend. *Hess v. Board of Educ.*, 341 Md. 155, 160, 669 A.2d 1352, 1354 (1996). As this Court held in *Bankers & Shippers Insurance Company v. Electro Enterprises*, 287 Md. 641, 648, 415 A.2d 278, 282 (1980), this rule applies to attorneys' fees incurred in a declaratory judgment action to determine policy coverage as well as to fees incurred in defending the tort action. The *Electro Enterprises* case, like the one before us, involved a declaratory judgment action initiated by the insurer asking that it be relieved of any obligation to defend the insureds. The Court wrote:

> [A]n insurer is liable for the damages, including attorneys' fees, incurred by an insured as a result of the insurer's breach of its contractual obligation to defend the insured against a claim potentially within the policy's coverage, and this is so whether the attorneys' fees are incurred in defending against the underlying damage claim or in a declaratory judgment action to determine coverage and a duty to defend.

*Id.*, 415 A.2d at 282.

The circuit court concluded that State Farm owed Pamela Litz no duty to defend because her babysitting constituted a business pursuit, and this issue was not raised on appeal. Thus, Mrs. Litz is responsible for her attorney's fees incurred in defending the declaratory judgment action.

State Farm owed Mr. Litz a duty to defend. Thus, the attorney's fees incurred by Mr. Litz in defending against State Farm's declaratory judgment action are fees "incurred by an insured as a result of the insurer's breach of its contractual obligation to defend the insured against a claim potentially

within the policy's coverage...." *Id.*, 415 A.2d at 282. State Farm is liable for those fees.

## VI.

We consider now the second question presented in the petition for certiorari: whether, apart from the circuit court's decision on the merits of the declaratory judgment action, the circuit court erred in entertaining the declaratory judgment action prior to the resolution of the underlying tort trial.

We again turn to *Brohawn v. Transamerica Insurance Company*, 276 Md. 396, 347 A.2d 842 (1975). In *Brohawn*, Mary Brohawn, the insured, was sued for both assault and negligence arising out of an incident at a nursing home in which Brohawn allegedly hit a nursing home employee. The comprehensive liability sections of Brohawn's homeowner's insurance policy excluded injury caused by the intentional act of the insured. Transamerica Insurance contended that it had no duty to defend due to the intentional act exclusion and sought a declaratory judgment that Brohawn's acts were intentional. The trial court in *Brohawn* properly denied Transamerica's requested relief because the factual issues relied upon to deny coverage would be resolved in the underlying tort trial, specifically, whether Brohawn acted intentionally or negligently.

We recognized in *Brohawn* that a declaratory judgment action prior to the underlying tort trial can be both a valuable and appropriate means of resolving questions of policy coverage when the question of policy coverage is "independent and separable from the claims asserted in a pending suit by an injured third party." *Brohawn*, 276 Md. at 405, 347 A.2d at 848. When a question sought to be resolved in the declaratory judgment proceeding would be decided in the pending tort action, however, it is ordinarily inappropriate to grant a declaratory judgment prior to resolution of the underlying tort trial. *Id.* at 406, 347 A.2d at 849; *see Allstate Ins. Co. v. Atwood*, 319 Md. 247, 252, 254–55, 572 A.2d 154, 157–58 (1990).

In the case before us, State Farm filed a declaratory judgment action seeking, *inter alia*, a declaration that State Farm was not obligated to indemnify and defend Pamela and David Litz. In its complaint in the declaratory judgment action, State Farm alleged that "David and Pamela Litz were providing care and babysitting services for Stephanie Wright on a regular basis and had been receiving financial compensation for these services." The complaint also referred to the facts alleged in the complaint in the Wright's underlying tort action. In that complaint, the Wrights alleged that "David and Pamela Litz were babysitting the Minor Plaintiff Stephanie Wright" when she was injured. In the answer to the declaratory judgment complaint, Pamela Litz "denie[d] that the alleged bodily injury arose 'out of business pursuits' of an insured, as the term 'business' is defined in the policy." David Litz "assert[ed] that regardless of whether or not his wife, Pamela Litz, was engaging in a 'business pursuit' out of which the alleged bodily injury arose, that he was never so engaged and as such, the purported exclusion does not apply to him."

At the declaratory judgment trial, State Farm introduced evidence that Mrs. Litz's babysitting constituted a business pursuit. The Litzes countered with evidence that Mrs. Litz had only agreed to babysit as a favor to a neighbor and only for a temporary period of time. The circuit court concluded that Mrs. Litz's babysitting services constituted a business pursuit and, therefore, the business pursuits exclusion of the policy applied. On that basis, the court declared that "State Farm Fire and Casualty Company is not obligated to defend and/or indemnify Defendants Pamela J. Litz and David W. Litz in the case of *Wright v. Litz*."

We hold that the circuit court properly entertained the declaratory judgment action as to Pamela Litz. Mrs. Litz did not deny that she was babysitting for Stephanie Wright at the time of the accident. Rather, in defending the declaratory judgment action, she contended that the babysitting did not constitute a business pursuit within the meaning of the policy exclusion. The circuit court concluded that "the babysitting services provided by Pamela Litz at the time of the alleged

injury ... constitute[ ] a business pursuit as defined in the State Farm policy," and this issue was not raised on appeal.[6] Thus, we affirm the declaratory judgment as it pertains to Pamela Litz.

We hold that, as to David Litz, the circuit court erred in entertaining a declaratory judgment action prior to the tort trial. The trial court decided an issue in the declaratory judgment action that is necessary to decide in the tort case against Mr. Litz. Specifically, State Farm's complaint in the declaratory judgment action alleges that Mr. Litz, as well as Mrs. Litz, babysat for Stephanie. In his answer, however, Mr. Litz asserted that, even if his wife's babysitting constitutes a business pursuit, he was never engaged in the business pursuit. Thus, the issue of whether Mr. Litz participated in the babysitting, regardless of whether it is classified as a business pursuit, is an issue to be resolved in the underlying tort case. Entertaining the declaratory judgment before the tort trial was error in this case as to Mr. Litz because in order to declare that State Farm had no duty to indemnify or defend Mr. Litz, it must first be established that Mr. Litz participated in the babysitting. As noted above, this is an issue that necessarily will be decided at the tort trial. According to *Brohawn* and its progeny, this issue is inappropriate for resolution in the declaratory judgment action prior to the tort trial.[7] Accordingly, we reverse the declaratory judgment as it pertains to David Litz.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT*

6. We intimate no opinion on whether the circuit court was correct to conclude that the babysitting in this case constituted a business pursuit.

7. We note that had the declaratory judgment action decided only whether the babysitting in this case constituted a business pursuit it may have been appropriate. Whether the babysitting in this case rose to the level of a business pursuit under the terms of the policy would not be relevant to establishing the elements of the Wrights' negligence claim against the Litzes. *See, e.g., Chantel Associates v. Mt. Vernon,* 338 Md. 131, 149, 656 A.2d 779, 786 (1995) (allowing declaratory judgment action prior to trial to determine dates of lead paint related injuries).

*WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR CHARLES COUNTY AND TO REMAND TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.   COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID ONE–HALF BY RESPONDENT AND ONE–HALF BY PETITIONER PAMELA LITZ.*