### NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,

v.

### Arnold MEKILIESKY, et al.

### Civil No. Y–96–1502.

United States District Court,
D. Maryland.

Aug. 29, 1997.

---

William C. Parler, Jr., Parler & Wobber, Towson, MD, for Plaintiff.

Arthur G. Kahn, Levin & Gann, P.A., Baltimore, MD, for Defendants.

*MEMORANDUM OPINION*

JOSEPH H. YOUNG, Senior District Judge.

This suit arises from a dispute between Nationwide Mutual Fire Insurance Company ("Nationwide") and Arnold Mekiliesky ("Mekiliesky") over whether an insurance policy issued by Nationwide covers a pending lead poisoning case filed against Mekiliesky in the Circuit Court for Baltimore City. A two-day non-jury trial was held May 27–28, 1997. The findings of fact and conclusions of law as stated herein are in accordance with the provisions of Federal Rule of Civil Procedure 52(a) whether or not so stated.

I.

Mekiliesky is a certified public accountant who owns several rental properties in Balti-

more City, including 1602 N. Port Street. In 1990, Mekiliesky purchased insurance from Nationwide to cover his business, automobiles, personal home, and four rental properties.

In 1991, Nationwide added a lead exclusion to all of its homeowners' policies in Maryland, including those with liability coverage for rental properties. Specifically, the endorsement excluded personal liability coverage for claims "arising out of the ingestion or inhalation of lead or lead compounds." (Pl.'s Ex. 2). The endorsement was added to policies at the time of their annual renewal. Nationwide alerted its insureds of the new endorsement by mailing a copy of the endorsement, a stuffer highlighting the exclusion, and a reference to the new endorsement with an asterisk on the renewal declaration. (Pl.'s Ex. 2–4). Nationwide contends that notice of the lead poisoning exclusion was mailed to Mekiliesky in July 1991 and became effective August 27, 1991.

Tonya Gill ("Gill") was a tenant of Mekiliesky at 1602 N. Port Street beginning sometime between March 1990 and March 1991. Gill's daughter, Jasmine Warren ("Warren"), was born August 8, 1991. (Def.'s Ex. 1). Warren was first diagnosed with an elevated blood lead level of 22 micrograms per deciliter on November 24, 1992.

On April 20, 1996, Mekiliesky was served with a suit filed by Warren and her mother in the Circuit Court for Baltimore City. *Jasmine Warren v. Mekiliesky, et al.,* Case No. 95258027/CL21223 ("*Warren* case") (Pl.'s Ex. 7). The suit seeks $1 million in damages due to Warren's exposure to lead-based paint at 1602 N. Port Street.

Nationwide filed the pending action seeking a declaratory judgment that it is under no duty to defend or indemnify Mekiliesky in relation to the *Warren* case. Mekiliesky filed a counterclaim seeking to require Nationwide to defend the *Warren* case and seeking attorneys' fees for defending this declaratory judgment action. A two-day non-jury trial was held May 27–28, 1997.

## II.

■ Under Maryland law, insurance policies are to be interpreted in the same manner as other contracts; there is no rule that insurance policies are to be construed against the insurer. *Collier v. MD–Individual Practice Ass'n,* 327 Md. 1, 5, 607 A.2d 537 (1992). The goal in construing insurance policies is to ascertain and give effect to the intentions of the parties at the time of contracting. *Sullins v. Allstate Ins. Co.,* 340 Md. 503, 508, 667 A.2d 617 (1995); *Schuler v. Erie Ins., Exch.,* 81 Md.App. 499, 505, 568 A.2d 873 (Md.Ct. Spec.App.), *cert. denied,* 319 Md. 304, 572 A.2d 183 (1990). The Maryland Court of Appeals has summarized the applicable principles of construction as follows:

> Construction of insurance contracts in Maryland is governed by a few well-established principles. An insurance contract, like any other contract, is measured by its terms unless a statute, a regulation, or public policy is violated thereby. To determine the intention of the parties to the insurance contract, which is the point of the whole analysis, we construe the instrument as a whole. Maryland courts should examine the character of the contract, its purpose, and the facts and circumstances of the parties at the time of the execution.

*Pacific Indem. Co. v. Interstate Fire & Cas. Co.,* 302 Md. 383, 388, 488 A.2d 486 (1985) (citations omitted).

## III.

The initial question the Court must examine is whether Nationwide's purported exclusion of lead claims in the renewal policy was effective under Maryland law as of August 27, 1991.

■ When considering renewal policies, "[m]ost jurisdictions impose an affirmative duty on the insurer to make the insured aware of changes inserted into a renewal policy; absent notice of the change, the insured is entitled to coverage as the original policy stated." *Government Employees Ins. Co. v. Ropka,* 74 Md.App. 249, 267, 536 A.2d 1214 (Md.Ct.Spec.App.), *cert. denied,* 312 Md. 601, 541 A.2d 964 (1988). Accordingly, in Maryland "as a matter of fairness and of assuring mutual assent to what is, in reality, a new contract, the law requires that reasonable notice be given to the insured if the

insurer intends to make a significant change in the new policy." *J.A.M. Assoc. of Baltimore v. Western World Ins. Co.*, 95 Md.App. 695, 704, 622 A.2d 818 (Md.Ct. Spec.App.1993).

In assessing the adequacy of notice of coverage changes given to an insured, courts will look for "a short, separately attached, and boldly worded modification." *J.A.M.*, 95 Md.App. at 704, 622 A.2d 818 (quoting 13A APPLEMAN, INSURANCE LAW & PRACTICE § 7648). "If changes are to be made, it is properly done by simply expressing the changes in the renewal or continuation receipt, or by mailing an endorsement along with the premium notice." *Id.*

In the pending case, the Court finds that Nationwide has met its burden of notifying Mekiliesky of the lead exclusion. Although the reference to the endorsement with an asterisk on the renewal declaration by itself does not provide sufficient notice under Maryland law, the endorsement and/or stuffer are sufficient notice to Mekiliesky to make the exclusion effective. The endorsement (Pl.'s Ex. 2) states in bold letters at the top that it contains "Exclusions mandatory endorsement" and instructs the insured to "[p]lease attach this important addition to your policy." The endorsement contains two new exclusions: one relating to communicable disease and the other relating to ingestion or inhalation of lead. The stuffer (Pl.'s Ex. 3) contains all of the language of the endorsement as well as a box at the top addressed "Attention Policyholders ...." which states that "an exclusion of coverage for ingestion and inhalation of lead compounds" has been added to the policy. These documents constitute "a short, separately attached, and boldly worded modification" of the policy.

Having concluded that the endorsement and/or stuffer constitute adequate notice, the Court must determine whether these documents were sent to and received by Mekiliesky. Mekiliesky contends that he did not receive the documents based on his inability to locate them in his files. Nationwide, on the other hand, adduced testimony that the documents were mailed to all Maryland policy holders in accordance with the regular procedure of the company. Based on the evidence at trial, the Court finds that the endorsement and stuffer were sent to and received by Mekiliesky. Accordingly, the Court concludes that the exclusion of lead claims was effective under Maryland law as of August 27, 1991, and, therefore, Nationwide has no duty to indemnify Mekiliesky for damages resulting from the *Warren* case.

## VI.

Maryland law recognizes that "[t]he duty to defend is broader than the duty to indemnify." *Litz v. State Farm Fire & Cas. Co.*, 346 Md. 217, 695 A.2d 566, 569 (1997); *Hartford Accident & Indem. Co. v. Sherwood Brands, Inc.*, 111 Md.App. 94, 106, 680 A.2d 554 (Md.Ct.Spec.App.), *cert. granted,* 344 Md. 116, 685 A.2d 450 (1996); 7C APPLEMAN, INSURANCE LAW & PRACTICE § 4684. The duty to defend extends if there exists a "potentiality that the claim could be covered by the policy." *Brohawn v. Transamerica Ins., Co.*, 276 Md. 396, 409–10, 347 A.2d 842 (1975). "Under the potentiality rule, the insurer will be obligated to defend more cases than it will be required to indemnify because the mere possibility that the insurer will have to indemnify triggers the duty to defend." *Litz,* 695 A.2d at 570.

Potentiality of coverage is normally determined by the allegations of the complaint, but in some circumstances extrinsic evidence may also be used. *Litz,* 695 A.2d at 570; *Brohawn,* 276 Md. at 407, 347 A.2d 842. The Maryland Court of Appeals has explained the need to examine extrinsic evidence as follows:

[T]he insurer should not be allowed to refuse to defend based solely on allegations in the complaint because the insured is completely at the mercy of the tort plaintiff's pleadings to establish a potentiality of coverage.

*Litz,* 695 A.2d at 570 (citing *Aetna Cas. & Sur. Co. v. Cochran,* 337 Md. 98, 111, 651 A.2d 859 (1995)).

To determine if a potentiality of coverage exists in the pending case, the Court must examine whether Warren was exposed to lead-based paint in utero or otherwise prior

to August 27, 1991 when Nationwide's exclusion of lead claims became effective.

█ The complaint in the *Warren* case states that Warren's mother was a tenant at 1602 N. Port and that Warren "lived in the dwelling or frequented the dwelling as an invitee of the tenant during 1992–1993." (Pl.'s Ex. 7, § 3). The complaint goes on to state that "[d]uring the time the Plaintiff resided in the dwelling, the Plaintiff ingested and consumed paint and dust containing lead and lead pigment thereby causing the Plaintiff to suffer the injuries, illness and infirmities herein alleged."[1] (Pl.'s Ex. 7, § 5). Thereupon, the Court finds that the complaint does not evince a potentiality of coverage because Warren and her mother do not allege any exposure prior to the August 27, 1991 effective date of the lead exclusion.

The extrinsic evidence is equally unavailing. Mekiliesky's expert, Dr. Ellen Silbergeld, testified that if Warren's mother was exposed to lead then Warren would have been exposed to lead. Dr. Silbergeld, however, acknowledged that it was impossible to estimate the lead exposure *in utero* to Warren based on the evidence available and noted that her opinions were based on the assumption that Warren's mother had an elevated lead level. Dr. Silbergeld's opinion is further devalued by the fact that there is no evidence in the record that Warren's mother had an elevated lead level during her pregnancy or that Warren had an elevated lead level prior to her diagnosis on November 24, 1992. In fact, Nationwide's expert, Dr. Edward Emmett, testified that while *in utero* exposure was theoretically possible it was unlikely given the facts of this case. There is no evidence Warren's mother was suffering from lead poisoning. There is no evidence Warren had symptoms of lead poisoning when she was born. Finally, Dr. Emmett noted the half life of lead in the human body is approximately one month so the lead in Warren's system on November 24, 1992 when she was diagnosed with an elevated lead level[2] would have represented a fairly recent exposure.

Having considered the allegations of the complaint in the *Warren* case as well as the extrinsic evidence, the Court concludes that no potentiality of coverage exists. Jasmine Warren was not nor does she claim to have been exposed to lead-based paint in *utero* or otherwise prior to August 27, 1991 when Nationwide's exclusion of lead claims became effective. Accordingly, Nationwide has no duty to defend Mekiliesky in the *Warren* case.

## V.

Based upon the foregoing analysis, the Court concludes that Nationwide has no duty to indemnify or defend Mekiliesky in the *Warren* case, and, accordingly, judgment will be entered in favor of Nationwide.

## ORDER

In accordance with the attached Memorandum, it is this 29th day of August 1997, by the United States District Court for the District of Maryland, ORDERED:

1. That Judgment BE, and the same IS, hereby ENTERED in favor of Plaintiff Nationwide Mutual Fire Insurance Company; and

2. That a copy of this Memorandum and Order be mailed to counsel for the parties.

---

1. Mekiliesky suggests that the term "Plaintiff" is ambiguous. The ambiguity disappears, however, when paragraph 5 is read in context with paragraph 3. Paragraph 3 refers to "[t]he mother of the Plaintiff, Tonya Gill," and "the Plaintiff, Jasmine Warren." (Pl.'s Ex. 7).

2. Dr. Emmett testified that a blood lead level of 22 micrograms per deciliter does not represent lead poisoning but rather only an elevated lead level.