**MUTUAL BENEFIT GROUP Plaintiff**

v.

**WISE M. BOLT COMPANY, INC., et al. Defendants**

No. CIV. H–01–4196.

United States District Court, D. Maryland.

Oct. 16, 2002.

William Carlos Parler, Jr., Parler and Wobber LLP, Towson, MD, for plaintiff.

David Bryan Applefeld, Gregory M. Kline, Adelberg, Rudow, Dorf and Hendler, LLC, Baltimore, MD, James E. Crawford, Jr., Catonsville, MD, Douglas T.

Sachse, Turnbull, Mix and Farmer, Towson, MD, for defendants.

### MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, Senior District Judge.

In this civil action, the Court has been called upon to construe provisions of an insurance policy. Plaintiff Mutual Benefit Group ("Mutual Benefit") issued a commercial general liability insurance policy (the "Policy") to defendants Wise M. Bolt Company, Inc. and Stanley E. Bolt (collectively the "Bolt parties").[1] The Bolt parties and the other defendants are presently being sued in the Circuit Court for Baltimore County by Herbert W. and Elaine C. Tracey (the "Traceys"), and they have called upon Mutual Benefit to defend and indemnify them in that case. In this action, plaintiff Mutual Benefit seeks a declaratory judgment pursuant to 28 U.S.C. § 2201(a), declaring that it has no duty to defend or indemnify the Bolt parties for any claims arising out of their faulty construction of the Tracey's house, as alleged in the state court case. Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a), and Maryland law is controlling.

Presently pending before the Court is the motion of the Bolt parties for partial summary judgment and to dismiss, and plaintiff's cross-motion for summary judgment. Memoranda and exhibits have been submitted by the parties in support of their pending motions. Following its review of the pleadings, memoranda and exhibits, the Court is satisfied that no hearing is necessary. See Local Rule 105.6. For the reasons stated herein, this Court will grant defendants'[2] motion for partial summary judgment, will deny defendants' motion to dismiss, will deny plaintiff's motion for summary judgment and will stay further proceedings in this case pending final resolution of the state court action. Defendants' request for an award of attorneys' fees and costs will be addressed at a later date after the stay has been lifted.

## I

### Background Facts

On January 1, 1999, the Bolt parties purchased from Mutual Benefit a commercial general liability policy, known as an "Artisan's Contractor Policy." Under Coverage A of Section I of the Policy, Mutual Benefit agreed to pay the Bolt parties sums which they became legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence." "Property damage" is defined by Section V of the policy as:

a. Physical injury to tangible property, including all resulting loss of use of that property; or

b. Loss of use of tangible property that is not physically injured.

Similarly, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Section I of Coverage A of the Policy further provided that Mutual Benefit had the "right and duty to defend" any suit against the Bolt parties seeking damages for "bodily injury" or "property damage" covered under the policy.

1. Also named as defendants in this action are Daniel R. Manager, t/a Danzco Hardwood Flooring, and Herbert W. and Elaine C. Tracey.

2. Since the Bolt parties are the only defendants who have filed a motion in this case, any reference herein to "defendants" will be solely to the Bolt parties.

The Policy also contained exclusions to Coverage A of Section I. Specifically, the Policy excluded coverage for bodily injury or property damage "expected or intended from the standpoint of the insured." The Policy also included various other exclusions pertaining to the insured's work and product. Work of the insured is defined as:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

On October 14, 1998, Wise M. Bolt and Stanley E. Bolt entered into a written contract with Herbert W. Tracey and Elaine C. Tracey ("the Traceys") to construct a house located in Baltimore County at 14643 Thornton Mill Road for $270,000. The newly constructed house did not meet the Traceys' expectations. In July 2001, the Traceys filed suit against the Bolt parties and Daniel Manager t/a Danzco Hardwood Flooring ("Danzco") in the Circuit Court for Baltimore County, alleging that defendants breached the terms of their contract with the Traceys and negligently constructed the house. *Herbert W. Tracey v. Wise M. Bolt Co.*, No. 03–C–01–007597 (Cir. Ct. for Balto. County) (the "underlying action").

After having been served with process in that suit, the Bolt parties requested that Mutual Benefit defend the underlying action pursuant to provisions of the Policy. On October 31, 2001, Mutual Benefit send a letter to the Bolt parties agreeing to defend them in the Baltimore County case subject to a reservation of rights. On December 19, 2001, Mutual Benefit filed this suit in this Court seeking a declaration that it was under no obligation to defend or indemnify the Bolt parties for the claims asserted against them in the underlying action. At an early stage of this case

and before the parties had undertaken discovery, the Bolt parties filed a motion to dismiss or to stay. On March 4, 2002, this Court denied that motion. The parties were directed to proceed with discovery, and a Scheduling Order was entered.

On April 19, 2002, the Traceys amended their complaint in the underlying action asserting additional claims. In the underlying action, there is a discovery deadline of October 20, 2002, and the case has been set for trial commencing on January 13, 2003.

## II

### *Applicable Principles of Law*

The principles to be applied by this Court in considering a motion for summary judgment under Rule 56, F.R.Civ.P., are well established. A party moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). This burden is met by consideration of affidavits, exhibits and other evidentiary materials. *Id.*

In Maryland, an insurance policy is a contract and is to be read as any other contract. *Little v. First Federated Life Ins. Co.*, 267 Md. 1, 296 A.2d 372 (1972). The words of an insurance policy are to be given their ordinary meaning. *C & H Plumbing and Heating, Inc. v. Employers Mut. Cas. Co.*, 264 Md. 510, 287 A.2d 238 (1972).

When deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself. *Bausch & Lomb v. Utica Mut.*, 330 Md. 758, 779, 625 A.2d 1021 (1993). Maryland does not follow the rule, adopted in many

jurisdictions, that an insurance policy is to be construed most strongly against the insurer. *Cheney v. Bell Nat'l Life*, 315 Md. 761, 766, 556 A.2d 1135 (1989). Rather, following the rule applicable to the construction of contracts generally, the parties' intention should be ascertained if reasonably possible from the policy as a whole. *Id.* at 767, 556 A.2d 1135.

The obligation of an insurer to defend its insured is determined by the allegations made in the action against the insured. *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 407–08, 347 A.2d 842, (1975). However, an insurer has an affirmative obligation to defend when there exists a "potentiality that the claim could be covered under the policy." *Litz v. State Farm Fire and Cas. Co.*, 346 Md. 217, 225, 695 A.2d 566 (1997). Any potentiality of coverage, " 'no matter how slight, gives rise to the duty to defend.' " *Id.* at 226, 695 A.2d 566 (citation omitted). Thus, the allegations in the complaint must be viewed broadly, encompassing not only the four corners of the complaint, but also any extrinsic evidence allowing the insured to establish the potentiality of coverage. *Aetna Cas. & Surety Co. v. Cochran*, 337 Md. 98, 109, 651 A.2d 859 (1995); *Litz*, 346 Md. at 226, 695 A.2d 566.

"[D]eclaratory judgments in advance of tort trials to resolve issues presented in pending tort cases should be rare." *Allstate Ins. Co. v. Atwood*, 319 Md. 247, 254, 572 A.2d 154 (1990). However, a declaratory judgment action brought prior to the underlying tort trial may be a valuable and appropriate means of resolving questions of policy coverage when the questions of coverage are *"independent and separable* from the claims asserted in a pending suit by an injured third party." *Brohawn*, 276 Md. at 405, 347 A.2d 842 (emphasis added). "When a question sought to be resolved in the de-claratory judgment proceeding would be decided in the pending tort action, however, it is ordinarily inappropriate to grant a declaratory judgment prior to a resolution of the underlying tort trial." *Litz*, 346 Md. at 233, 695 A.2d 566 (citing *Brohawn*, 276 Md. at 406, 347 A.2d 842).

### III

### *Discussion*

### (a)

### *Duty to Defend*

Whether Mutual Benefit had a duty to defend the Bolt parties in the underlying action must be determined by a review of the allegations of the amended complaint. *See Brohawn*, 276 Md. at 407–08, 347 A.2d 842. In the underlying action, the Traceys have asserted five claims as follows: Count One—breach of contract by the Bolt parties; Count Two—breach of contract by Danzco; Count Three—negligent construction by the Bolt parties; Count Four—negligent construction by Danzco; and Count Five—breach of contract to repair by the Bolt parties. The Traceys allege that the hardwood floor installed by the Bolt parties and Danzco was an improper size and type, and that the installation of the floor was also improper. In addition, the Traceys allege that the Bolt parties were negligent in their supervision, performance, and/or installation of drywall, a stairwell, trim work, painting, heating and cooling systems, oil tanks, fireplace bricks, insulation, windows, interior framing, plumbing, exterior stoops, patio and sidewalks, and exterior siding.

The amended complaint also identifies specific consequential damages caused by the defendants' actions. The Traceys have alleged that the installation of improper windows allowed outdoor elements to enter the house causing damage to their furnish-

ings, that the improper installation of the heating and cooling systems resulted in damage to food located in the pantry and loss of use of the pantry, and that the improper installation of plumbing caused a septic tank odor from the commode, as well as improper water drainage. In the underlying action, the Traceys seek substantial damages from both the Bolt parties and Danzco.

The nature and extent of the damages claimed by the Traceys was explored at the deposition of Mrs. Tracey taken in this case. She testified, *inter alia*, that she and her husband sustained the following damages: (1) loss of use of the house; (2) rental and other associated costs for the period of time the Traceys had to move out of the house; (3) diminished value of the house; (4) cost of removing, protecting, storing and reinstalling large game trophies; (5) cost of repairing kitchen cabinets supplied by a third party; (6) loss of use of the bathroom as a result of septic odors; (7) cost of re-tiling a shower and tile floor; and (8) cost of replacing brickwork as a result of settlement.

▬▬▬ Applying the pertinent principles of law to the facts of record here, this Court concludes that under the Policy plaintiff Mutual Benefit has a duty to defend the Bolt parties in the underlying action. Viewing broadly the allegations of the amended complaint in the underlying action, a potentiality of coverage exists. It is necessary under Maryland law only that there be allegations which are potentially covered by a policy, "no matter how attenuated, frivolous, or illogical" such allegations may be. *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 643, 679 A.2d 540 (1996). Any doubt as to whether there is a potentiality of coverage under an insurance policy is to be resolved in favor of the insured. *Chantel Assocs. v. Mount Vernon Fire Ins. Co.*, 338 Md. 131, 145, 656

A.2d 779 (1995). If some of the claims against an insured fall within the terms of coverage and some without, the insurer must still defend the entire claim. *Hartford Accident v. Sherwood*, 111 Md.App. 94, 107, 680 A.2d 554 (1996), vacated on other grounds, 347 Md. 32, 698 A.2d 1078 (1997) (citing *Titan Holdings Syndicate v. Keene*, 898 F.2d 265, 269 (1st Cir.1990)). Facts of record in this case indicate that the Traceys are seeking to hold the Bolt parties liable for "property damage" caused by an "occurrence." Therefore, a potentiality of coverage exists, and Mutual Benefit's duty to defend is triggered by the existence of such potentiality. *Brohawn*, 276 Md. at 407–08, 347 A.2d 842.

Plaintiff advances three arguments in support of its contention that the claims in the underlying suit do not potentially fall within the coverage of the Policy. According to plaintiff, defendants' claims do not constitute a covered "occurrence" under the Policy, defendants' claims do not allege "property damage" as defined by the Policy, and defendants' claims are otherwise excluded under the Policy. The Court will address each of plaintiff's arguments in turn.

Under the Policy, an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Policy specifically excludes occurrences expected or intended by the insured. Plaintiff argues that the damages alleged by the Traceys relate to the satisfaction of the contract between them and the Bolt parties and should therefore be considered "expected" by the Bolt parties.

▬▬▬ In the context of cases dealing with construction damages, the critical inquiry in determining whether alleged damages were "expected" by the insured is whether the damages relate to the satisfaction of the insured's contractual obli-

gations to construct its product or whether the damages relate to something other than the insured's product. In *Lerner Corp. v. Assurance Co. of America*, 120 Md.App. 525, 536–37, 707 A.2d 906 (1998), the Court explained this distinction:

> If the damages suffered relate to the satisfaction of the contractual bargain, it follows that they are not unforeseen. In other words, and in the context of this case, it should not be unexpected and unforeseen that, if the Building delivered does not meet the contract requirements of the sale, the purchaser will be entitled to correction of the defect. This, we believe, would be the expectation and understanding of the reasonably prudent lay purchaser of a CGL policy. On the other hand, if the defect causes unrelated and unexpected personal injury or property damage to something other than the defective object itself, the resulting damages, subject to the terms of the applicable policy, may be covered.

In *Harbor Court Associates v. Kiewit Construction Co.*, 6 F.Supp.2d 449 (1998), Judge Garbis of this Court noted and applied this distinction. In *Harbor Court*, the owners and developers of a building complex sued various contractors for negligence, breach of contract, and indemnification. *Id.* at 453. The contractors brought third-party complaints against their insurers asserting that the insurers had a duty to defend and a duty to indemnify. *Id.* The central issue before the Court was whether the damages caused by the various contractors were **"expected" in the context of a general liability policy. Judge Garbis held that the general contractor's insurer had no duty to defend because the underlying complaint alleged damage to the general contractor's work and product,** *i.e.* **the building.** *Id.* at 457–58. **However, the Court further found that two of the subcontrac-**

**tors' insurers did have a duty to defend because the underlying complaint alleged damage not only to the subcontractors' work and product, but also to work performed by other contractors.** *Id.* **The court reasoned:**

> [I]n the context of a construction project, the word "expected" refers to damages for which an insured would be liable in any event, irrespective of fault, because of its contractual obligations to construct its product.... Damage to property other than the insured's work or product would be "unexpected" and, thus, caused by an occurrence.

*Id.* at 452.

■ On the record here, this Court concludes that the Traceys have alleged in the underlying action property damage caused by an "occurrence." The central question in this case is whether the Traceys have alleged damages to something other than the Bolt parties' product, namely the house. The Court concludes from a review of the amended complaint that the Traceys have alleged damages both to the house and to other property, as well as loss of use of the house. Specifically, the amended complaint in the underlying case alleges damage to the Traceys' furnishings, damage to food located in the pantry, and loss of use of the pantry. As Mrs. Tracey's deposition testimony makes clear, the Traceys are claiming consequential damages to property other than their house. The Traceys contend that they sustained allegedly unrelated and unexpected damages which were caused by the defective construction work done by the Bolt parties. *See Lerner*, 120 Md.App. at 537, 707 A.2d 906. The amended complaint therefore contains allegations which are potentially covered by the Policy even though they may be attenuated. *Sheets*, 342 Md. at 643, 679 A.2d 540.

■ Plaintiff next argues that the claims made in the underlying suit do not constitute "property damage" under the Policy. Under the Policy, "property damage" includes physical injury to tangible property, including all resulting loss of use of that property and also loss of use of tangible property that is not physically injured.

The underlying amended complaint, as supported by Mrs. Tracey's deposition testimony, alleges damages to the home itself, damages to other property, and loss of use of property. Applying the ordinary meaning of the Policy rule, this Court concludes that the damages alleged by the Traceys' clearly constitute "physical injury to tangible property" and "loss of use of tangible property."

In *Harbor Court*, Judge Garbis, in applying the principle that the words of an insurance policy are to be given their ordinary meaning, held that damage to a poorly constructed building was clearly "property damage" according to the definition of "property damage" in the policy. 6 F.Supp.2d at 455. This Court agrees with Judge Garbis' rationale that the ordinary meaning of policy language controls in a case of this sort. The Court accordingly concludes that the damages claimed by the Traceys constitute "property damage" under the Policy at issue here. Even if damages to the house itself would be excluded from the definition of "property damage," the damages alleged by the Traceys to property other than the house would still constitute "property damage" inasmuch as such damages are the consequential effects of the Bolt parties' alleged poor workmanship.

According to plaintiff, the alleged damage to other property should be ignored by the Court because such damages were first mentioned in the Traceys' amended complaint. But it is specious for plaintiff to suggest that the Court should ignore damages alleged for the first time in the Traceys' amended complaint. That pleading is a part of the record in the underlying action, and its allegations may properly be considered by this Court.

■ Plaintiff also argues that exclusions in the Policy bar coverage for the underlying action. Plaintiff relies on exclusions relating to the "insured's product" and the "insured's work." In particular, plaintiff first contends that exclusion n, the "insured's product" exclusion, bars coverage. Exclusion n bars coverage for "damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of: (1) 'Your product'; (2) 'Your work'; or (3) 'Impaired property'." "Your work" is defined as "[w]ork or operations performed by you or on your behalf" and "[m]aterials, parts or equipment furnished in connection with such work or operations."

■ The "product" of the Bolt parties was the house that they built. Under the ordinary meaning of the policy principle, damage to property other than the house is not excluded by the "insured's product" exclusion. Accordingly, in determining whether a potentiality of coverage exists, the Court must determine whether the Traceys have alleged in their state court suit damage to something other than the house. The amended complaint in the underlying case and the deposition testimony of Mrs. Tracy clearly disclose that the Traceys are alleging damage not only to the house itself but also to other property.[3]

---

**3.** The fact that damage to the house itself may not be covered under the Policy does not relieve Mutual Benefit of its duty to defend. When some of the claims against an insured

Plaintiff's reliance on *Century I Joint Venture v. United States Fidelity & Guaranty Co.*, 63 Md.App. 545, 493 A.2d 370 (1985) is misplaced. In *Century I*, the developer of a condominium building and the marketing company created by the developer were sued by the condominium owner for damages resulting from the faulty design and improper construction of a condominium. *Id.* at 549, 493 A.2d 370. The developer and the marketing company sought a declaratory judgment that their commercial liability insurer had a duty to indemnify and defend them in the underlying suit. *Id.* The court concluded that the "insured's product" exclusion precluded coverage. The court explained:

> The sense and meaning of exclusion (n) is that the policy did not insure against damages to the condominium arising from defects within the building itself. Since [the developer's] business consisted of the erection of a condominium building and the sale of individual condominium units therein, under a plain and ordinary interpretation of the exclusion, a condominium unit would be included within the definition of "products ... sold ... by the named insured."

*Id.* at 555, 493 A.2d 370.

In *Century I*, there were no allegations of damages occurring to anything other than the developer's product. Here, the Traceys have alleged damage to defendants' product and to other property.

■ Plaintiff also argues that exclusions j, k, l, and m, bar coverage. These exclusions are types of "your product" and "your work" exclusions. No authority has been cited by plaintiff in support of its contention that these exclusions bar coverage. The four exclusions relied upon by

plaintiff in essence exclude from coverage damages for loss or repair of the insured's product or of the insured's work. The Bolt parties' product was the house which they built, and their work was the work performed in building the house. But as noted, the claims brought against defendants are not limited to the costs of repairing the work performed by them on their product, but include allegations of damage to property other than the house itself. For these reasons, the Court concludes that none of the exclusions relied upon by plaintiff Mutual Benefit relieve it of its duty to defend the Bolt parties in the underlying action.

(b)

*Duty to Indemnify*

Plaintiff also seeks a declaration by this Court that Mutual Benefit has no duty to indemnify Bolt for the claims asserted in the underlying action. Defendants argue that this Court should abstain from deciding this issue and, after deciding the duty to defend issue, should dismiss the case.

■ On the record here, this Court concludes that it should abstain at this time from deciding whether Mutual Benefit has a duty to indemnify the Bolt parties. Mutual Benefit has here asked this Court to decide in this declaratory judgment action brought in this Court issues which are present in and would be finally resolved in the underlying action pending in the Circuit Court for Baltimore County. Before Mutual Benefit can even have a duty to indemnify, it must be determined first whether the Bolt parties are liable for any damages caused by its alleged poor workmanship and second whether any

---

fall within the terms of coverage, and some without, the insurer must still defend the entire claim. *Hartford Accident v. Sherwood*, 111 Md.App. 94, 107, 680 A.2d 554 (1996),

vacated on other grounds, 347 Md. 32, 698 A.2d 1078 (1997) (citing *Titan Holdings Syndicate v. Keene*, 898 F.2d 265, 269 (1st Cir. 1990)).

such damages were unexpected and unforeseen. These liability issues are at the heart of the underlying action. What particular damages the Bolt parties must or must not pay if they are found to be liable will be resolved in the underlying action. Moreover, Mutual Benefit has intervened and is a party in the Baltimore County case. If the Bolt parties are successful in their defense of the underlying action, the duty to indemnify question will be moot. It is well settled that where questions to be resolved in the declaratory judgment action will be decided in a pending suit, "it is inappropriate to grant a declaratory judgment." *Brohawn*, 276 Md. at 406, 347 A.2d 842.

Plaintiff argues that defendants are at this time merely rearguing their motion to dismiss or stay which this Court denied on March 4, 2002. The Court must disagree. The record presently before the Court is quite different from that which existed at the very early stage of the case when defendants moved to dismiss or stay. When this Court denied defendants' earlier motion, there were in the case independent and separable issues which were not present in the underlying action. This Court in its earlier ruling noted in particular plaintiff's contention that it had no duty to defend under the Policy because defendants had failed to cooperate with Mutual Benefit and had failed to promptly notify Mutual Benefit of the Traceys' claims. Plaintiff has now withdrawn those assertions. Therefore, there no longer remain in this case any independent and separable issues not present in the underlying action. It is accordingly not appropriate for this Court to determine at this time in this action whether Mutual Benefit has a duty to indemnify the Bolt parties. That question cannot be decided until after the issues in the underlying action have been determined.

■■ The Bolt defendants have asked this Court to dismiss this action after ruling on their motion for partial summary judgment. However, only one issue has been decided in their favor, namely plaintiff's duty to defend them in the underlying action. Were the result of the underlying action to be the entry of a judgment in favor of the Traceys against the Bolt parties and were there determinations made in that action which might support the contention of the Bolt parties that Mutual Benefit had a duty to indemnify them against payment of that judgment, the duty to indemnify issue would be ripe for a decision in this Court. If this action were now dismissed, the Bolt parties would be then required to institute a new suit against Mutual Benefit.

Under the circumstances, the more appropriate action is for this Court to stay further proceedings in this case. After the underlying action has been finally decided, either plaintiff Mutual Benefit or the Bolt defendants may move to lift the stay and proceed to litigate the duty to indemnify issue if it has not already been determined in the Baltimore County Court.

### (c)
### *Attorneys' Fees and Costs*

■■ In their motion for partial summary judgment, the Bolt parties contend that they are entitled to an award of attorneys' fees and costs. The rule in Maryland is firmly established that when an insured must resort to litigation to enforce its insurer's contractual duty to provide coverage for its potential liability to injured third parties, the insured is entitled to a recovery of the attorneys' fees and expenses incurred in that litigation. *Nolt v. U.S. Fidelity & Guaranty Co.*, 329 Md. 52, 56, 617 A.2d 578 (1993) (*citations omitted*); *Mesmer v. M.A.I.F.*, 353 Md. 241, 264, 725 A.2d 1053 (1999). In opposing defendants' request, plaintiff relies upon a

Maryland case where the court refused to award attorneys' fees because the case presented a "very close question for determination by the fact finder." *Maryland Auto. Ins. Fund v. Sparks,* 42 Md.App. 382, 396, 400 A.2d 26 (Md.App.1979).

██ Since further proceedings in this case are being stayed, and since the Bolt parties may be required to incur additional attorneys' fees and costs if the issue of plaintiff's duty to indemnify is litigated in this Court at a later time, the Court will not at this time address defendants' request that an award now be made to them of attorneys' fees and costs. Determination of this issue must await further proceedings in this case after the Court's stay is lifted.

## IV

### *Conclusion*

For all the reasons stated, it is this 16th day of October, 2002 by the United States District Court for the District of Maryland,

ORDERED:

1. That the motion for partial summary judgment of defendants Wise M. Bolt Company, Inc. and Stanley E. Bolt is hereby granted;

2. That plaintiff Mutual Benefit Group shall provide and pay for the defense of Wise M. Bolt Company, Inc. and Stanley E. Bolt in the case known and designated as *Tracey, et al. v. Wise M. Bolt Company, Inc., et al.* pending in the Circuit Court for Baltimore County, including all costs and fees;

3. That the motion to dismiss of defendants Wise M. Bolt Company, Inc. and Stanley E. Bolt is hereby denied;

4. That the motion for summary judgment of plaintiff Mutual Benefit Group is hereby denied; and

5. That proceedings in this case are hereby stayed until further Order of Court, without prejudice to the right of plaintiff or defendants to move to lift the stay at a later date.